[Civ. No. 22702. Second Dist., Div. Three. July 17, 1958.]

ROXY PRATHER, Appellant, v. GEORGE VASQUEZ
et al., Respondents.

FRANK R. HALTERMAN, Appellant, v. GEORGE
VASQUEZ et al., Respondents.

Ralph C. Curren and Charles T. Lester for Appellants.

Kenny, Morris & Ibanez and Richard A. Ibanez for Respondents.

SHINN, P. J.—George and Eleanor Vasquez (respondents) owned approximately 58 acres of agricultural land in La Puente. In July 1954, they orally employed Roxy Prather, a licensed real estate broker, to obtain a purchaser. Mrs.

Prather obtained Frank R. Halterman, and the parties signed escrow instructions on July 15, 1954.

The escrow instructions contemplated a sale of the property to Halterman or his nominee for $232,000, on the basis of $4,000 an acre, the exact acreage to be determined by Halterman's engineers and approved by the parties. The escrow was to close December 1, 1954. Halterman was to deposit $67,280 and a trust deed securing his promissory note for $164,720, payable January 5, 1955; respondents were to deposit a deed and 57 shares of water stock and to furnish a title policy. The parties were each to pay one-half of the escrow fees and the cost of drafting and recording the deeds. Mrs. Prather was to receive a $12,000 commission, payable from the funds accruing to respondents at the close of the escrow.

The instructions contained the following special provisions, which were prepared by the escrow officer at Halterman's request. "SUBJECT ONLY TO . . . Covenants, conditions, restrictions and public utility easements of record . . . *subject to my approval.*" "It is understood and agreed that: . . . (3) *In the event of cancellation the buyer is to pay all charges.*" "This escrow may be terminated by the seller at any time after 139 days from the date hereof, provided, the buyer does not deposit the funds agreed upon in this escrow, or the date of such deposit may be extended by the seller from time to time. *Termination of the escrow by the seller as herein provided shall be the seller's only remedy for buyer's failure to carry out the terms and conditions hereof and seller shall not be entitled to damages or specific performance as against the buyer, anythings* [sic] *in these instructions contained to the contrary notwithstanding.*" (Emphasis added.)

On September 18, 1954, respondents gave written notice of cancellation of the escrow instructions. Halterman refused to agree to a cancellation and rejected a subsequent offer by respondents to sell him the property for $4,200 an acre. October 25, 1954, respondents brought an action against Halterman for declaratory relief, in which it was contended that the escrow instructions were unenforceable and had been repudiated by the sellers; respondents caused the action to be dismissed after December 1st. Halterman did not deposit the $67,280 or the trust deed in the escrow. The acreage was later sold by respondents to one Garrick for $4,800 an acre.

Halterman sued the Vasquezes for substantial damages for their failure to convey the property. In a separate action, Mrs.

Prather sued for her $12,000 commission. The actions were consolidated for trial. Trial was to a jury. At the close of the evidence for the plaintiffs, respondents made motions for a nonsuit in each case; both motions were granted by the court. The present appeals are from the ensuing judgments of nonsuit; the appeals are presented on a single record and a single set of briefs.

The amended complaint in each suit stated several causes of action. In his first cause of action, Halterman alleged the execution of a written contract for the purchase and sale of the acreage, which respondents breached by cancelling the escrow. Mrs. Prather's first cause of action was likewise predicated on the existence of a written contract, which contained a promise by respondents to pay her a commission. The alleged contracts consisted of the escrow instructions, copies of which were attached as exhibits. General demurrers to these counts were sustained by the court without leave to amend upon the ground that the escrow instructions did not constitute an enforceable contract of sale. In his second cause of action, Halterman alleged that the parties signed escrow instructions, that respondents cancelled the escrow in bad faith and refused to convey the property unless he agreed to pay an additional $200 an acre, and that he was excused from depositing the cash and trust deed in escrow because the escrow instructions had been repudiated by Mr. and Mrs. Vasquez. Mrs. Prather alleged, in her second cause of action, that she obtained a purchaser ready, willing and able to buy the property on the terms set by respondents, that the parties signed escrow instructions, and that respondents wilfully frustrated a purchase by Halterman. Mrs. Prather also alleged a third cause of action in the form of a common count for services rendered to respondents as a real estate broker. The answers of respondents denied the allegation that Mrs. Prather had obtained a buyer ready, willing and able to purchase the acreage, and alleged that the Vasquezes were under no obligation to deposit a deed to the property until Halterman deposited the down payment and trust deed, which he did not do. Respondents also alleged a number of affirmative defenses upon which no evidence was introduced at the trial.

Halterman was the chief witness for the plaintiffs. He testified that he was engaged in subdividing the area surrounding respondents' acreage and that he had previously purchased several properties in the neighborhood. He stated that at all times between July 15 and December 1, 1954, he was ready,

willing and able to buy the acreage; a financial statement, indicating that in October 1954 he had assets in excess of $150,000, was introduced in evidence by stipulation.

The witness stated that after the escrow instructions were prepared, he gave copies to Mr. and Mrs. Vasquez and read the instructions aloud while respondents read their copies. He explained to Mr. and Mrs. Vasquez the provisions which we quoted earlier. He told them that if their land could not be subdivided he did not wish to buy it and that he wished to be protected from suit in case the acreage was not suitable for subdivision. With respect to his promise to "pay all charges" in the event of a cancellation, he testified that he told the escrow officer that "I wanted the clause in there to limit my liability in purchasing this land, in other words I'd guarantee all the escrow costs if it didn't go through but beyond that I wasn't liable." In response to a question by the court, Halterman stated that the clause meant that he would pay the escrow costs if, after making an investigation, he found that the acreage was unsuitable for subdivision and he did not go through with the transaction for that reason.

Halterman also testified that he began negotiating with the county authorities for a rezoning and subdivision of the property after July 15th. On September 17th, the day preceding cancellation of the escrow, he went to see Vasquez to ask for an easement across the acreage for sewage purposes, and Vasquez referred him to his attorney, a Mr. Egly. Halterman told Egly that he intended to go through with the transaction and Egly replied "There's ways of breaking contracts." Halterman returned to the farm and told Vasquez that "my counsel had advised me that I had a valid contract with him, and that I was going to pay his money as I agreed upon that contract, and I expected him to live up to his end of the contract, too." Halterman continued his efforts to obtain approval of a subdivision plan after cancellation of the escrow, but he did not deposit the $67,280 because "there wasn't any use to put up any money." In support of his allegations of damage, Halterman stated his opinion that the property was reasonably worth $4,750 an acre on September 18, 1954. A bill from the escrow company for $50 charges in connection with the escrow was introduced as an exhibit; Halterman admitted that he did not pay the bill. Vasquez paid the charges.

In deciding the motions for nonsuit, the court ruled, as to Halterman, "that the agreement of Mr. Halterman to pay escrow charges in the event that he did not go through with

the escrow does not furnish any consideration either for an agreement to sell by the Vasquezes or an agreement on their part . . . to keep an offer open, that is, an offer to sell open until December 1st. . . . There was in my opinion a unilateral promise only on the part of the Vasquezes, and being without consideration it could be withdrawn at any time before acceptance. In the Court's opinion it was withdrawn before any attempt was made to accept it.'' The court ruled, as to Mrs. Prather, that ''there was no unqualified agreement for the payment of any commission to her other than out of a special fund, namely, the proceeds of this sale, which was not a sale, . . . and she having no listing and no contract for the payment of a commission, she could earn one only by procuring not only a purchaser ready, willing and able to buy but also one bound by an enforceable contract to purchase, which this was not.''

The first point to be considered is the contention of appellants that the escrow instructions created a binding contract for the purchase and sale of the acreage, as alleged in the first causes of action of each complaint, and that the court erred in sustaining, without leave to amend, respondents' demurrers to those causes of action.

In our opinion, the demurrers were properly sustained. There is no basis for a contention that the escrow instructions constituted a binding agreement. It is settled that a contract for the purchase and sale of real property is not binding on either party unless its obligations are mutual and reciprocal; where, under the terms of an agreement, performance is optional with one of the parties, and the option is not exercised, the agreement lacks mutuality of obligation and it cannot be enforced against the other. (*Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650, 660-661 [277 P. 519], and cases cited; *Seymour* v. *Shaeffer*, 82 Cal.App.2d 823, 825 [187 P.2d 95]; 25 Cal.Jur. 506.)

It is obvious from a reading of the escrow instructions that Halterman was under no obligation to deposit the cash payment and trust deed and to complete a purchase of the property. The instructions specifically provided that he was not to be liable in damages on account of his failure to go through with the transaction and that he could not be compelled to do so. Compliance with the terms of the escrow was left wholly to his discretion. Since the agreement was not binding on the purchaser, it was not binding on the sellers,

and it cannot be contended that their cancellation of the escrow constituted a breach of an enforceable agreement to convey the property to Halterman.

 The next point to be considered is the contention of Halterman that respondents granted him an option to purchase the property on the terms set forth in the escrow instructions, that he gave a consideration for the option, and that respondents had no right to revoke it prior to December 1, 1954, the closing date of the escrow. The argument is without merit.

 An option to buy is a proposal by which the owner of property invests another with the exclusive right to purchase it at a stipulated price within a limited or reasonable time without imposing any obligation upon the party to whom it is given (25 Cal.Jur. 506, 507.) Where no consideration has been given for an option, it may be revoked by the optionor, at any time prior to its acceptance. (*Canty* v. *Brown,* 11 Cal.App. 487 [105 P. 428] ; *Raymer* v. *Hobbs,* 26 Cal.App. 298 [146 P. 906].) But an option given for a consideration may not be terminated without the consent of the optionee during the time specified therein. (12 Cal. Jur.2d 206.)

 We are of the opinion that no consideration was given by Halterman for a promise, by respondents to keep an offer to sell the acreage open until December 1, 1954. Halterman argues that the written instrument is presumptive evidence of consideration and that his. promise to ''pay all charges'' in the event of a cancellation of the escrow was a sufficient consideration for an option. We are not persuaded by his arguments. The true consideration or lack of consideration for a contract may always be shown. (12 Cal.Jur.2d 240.)

It is clear that the charges referred to were the normal charges incurred in the escrow. But the question arises whether this provision of the instructions was to apply to a cancellation of the escrow by the sellers as well as to a cancellation by the purchaser. In this respect the escrow instructions were ambiguous, and since Halterman directed and was responsible for the language of the instructions, the trial court was required, as we are, to adopt the interpretation most favorable to respondents, namely, that Halterman was to pay the costs of the escrow in the event he cancelled the escrow. (Civ. Code, § 1654.) Halterman was the one who reserved the privilege of withdrawing from the transaction.

There was good reason for his agreeing that if he did so the sellers would have incurred no expense. There would have been no reason for him to save the sellers from expense in case they refused to sell their property and it is clear that he did not agree to do so. This interpretation of the agreement finds support in Halterman's testimony that he intended to pay the charges if he did not go through with the transaction, and the.fact that he did not pay the $50 charged by the escrow company is further evidence of his understanding that he was not to pay the escrow fees in the event of a cancellation by Mr. and Mrs. Vasquez. Halterman's promise to pay the escrow charges in the event he decided not to buy the property cannot be regarded as consideration for a promise by respondents not to withdraw their offer to sell him the land.

We do not doubt that Halterman suffered detriment in endeavoring to obtain the authorities' approval of a rezoning and a subdivision. But the consideration for a promise must be an act or a return promise, bargained for and given in exchange for the promise. (*Bard* v. *Kent,* 19 Cal.2d 449, 452 [122 P.2d 8, 139 A.L.R. 1032], and cases cited.) Halterman's efforts would have constituted consideration for an option had respondents agreed to accept them as such. However, the escrow instructions did not contain a promise by Halterman to obtain approval of a subdivision plan or to do anything in the interest of .respondents, and it is clear that respondents did not agree to keep the offer open in return for his endeavors.

Since the offer to sell the acreage was wholly gratuitous, it could be revoked at will by Mr. and Mrs. Vasquez before it was accepted by the purchaser. Admittedly, Halterman did not deposit the cash and the trust deed in escrow, and he made no offer to do so. He did not obtain approval of a subdivision plan until November 12th. His statement to Vasquez on September 17th that he intended eventually to pay the money was wholly insufficient to constitute an exercise of the option. His right to purchase the property terminated upon cancellation of the escrow by respondents.

We have next to consider the contention of Mrs. Prather that she procured a buyer who was ready, willing and able to purchase the property on the terms set by Mr. and Mrs. Vasquez, and that she earned a broker's commission notwithstanding the fact that the transaction was never consummated. The argument cannot be maintained.

Mrs. Prather did not have a special contract with respondents for the payment of a commission and compensation was to be paid to her only from the funds accruing to Mr. and Mrs. Vasquez at the close of the escrow. In urging that she was entitled to a commission, Mrs. Prather relies upon *Collins* v. *Vickler Manor, Inc.*, 47 Cal.2d 875 [306 P.2d 783] and *Coulter* v. *Howard*, 203 Cal. 17 [262 P. 751]. In Collins it was held that where a broker had procured a buyer who was ready, able and willing to purchase on the terms fixed by his principal and the buyer and seller executed an agreement in the form of a deposit receipt which provided that the seller would pay the broker a commission, the right of the broker to receive a commission could not be defeated by the owner's arbitrary refusal to sell the property. The Supreme Court held in Coulter that the same rule is applicable even where the broker's commission is payable out of the funds available to his principal at the close of the escrow. Neither case is in point. The buyer obtained by Mrs. Prather was manifestly unwilling to enter into a binding contract to purchase respondents' acreage and he caused to be prepared escrow instructions which rendered the escrow agreement entirely lacking in mutuality. If there had been mutuality of agreement and the sellers had refused to comply, Mrs. Prather's right to a commission would not thereby have been defeated, even though it was to be paid only out of the proceeds of the sale. But since respondents were not obligated to sell the land to Halterman except upon acceptance of their offer before it was withdrawn it cannot be said that they were guilty of an arbitrary refusal to consummate a sale.

We find no substance in appellants' final contention that the motions for nonsuit did not contain a sufficient statement of the grounds of the motions. With particular reference to the motion in Halterman's case three separate grounds were stated and fully argued. These were also applicable to and were urged, with one additional ground, in the Prather case. This was sufficient. (*Eason* v. *Kelly Pipe Co.*, 16 Cal.App.2d 88, 95 [60 P.2d 488].)

The judgments are affirmed.

Wood (Parker), J., and Nourse, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 10, 1958.

---

*Assigned by Chairman of Judicial Council.