[Civ. No. 24260. Second Dist., Div. Three. Oct. 14, 1960.]

MAX SPIELBERG, Appellant, v. EDWARD M. GRANZ et al., Respondents.

Stanley N. Gleis and Robert A. Neeb, Jr., for Appellant.

Horowitz & Howard for Respondents.

FORD, J.—The question presented on this appeal is whether the evidence and the applicable law support the determination of the trial court that the plaintiff acted as a real estate broker in the transaction out of which the present action arose and, not having been licensed as such broker, he could not prevail as against the defendant Edward M. Granz.

In the first cause of action of his first amended complaint, the appellant alleged that by an agreement in writing the respondent Edward M. Granz gave him the right and option to purchase from that respondent, on or before September 1, 1955, certain real property for $7,500. He further alleged that the consideration for such agreement was the rendition of services by him for the respondent Edward M. Granz, at the request of the latter, "which included transportation from Los Angeles to said property, assisting said Defendant in the inspection of said property, and reviewing and approving escrow instructions and legal description of said property." It was further alleged that on August 11, 1955, the sum of $7,500 was tendered to the respondent Edward M. Granz but such tender was refused. That cause of action included other

allegations appropriate to an action for specific performance.

In the second cause of action, the appellant alleged that in the month of August, 1954, he and the respondent Edward M. Granz entered into an oral agreement ''to go into business together and said business was a single joint venture for the purchase of a particular piece of real estate located at Lancaster.'' It was also alleged that the appellant introduced the respondent to the owner of the property ''and the terms and conditions for the purchase were worked out, and as a part of the agreement of business between plaintiff and said defendant it was agreed that the plaintiff would buy an undivided one-fourth interest in the entire parcel and that the defendant would own 75% of the said parcel.'' The appellant further alleged that it was agreed that the appellant would have until September 1, 1955, within which to pay his share of the original purchase price of $30,000, and that on or about December 17, 1954, the terms of the agreement were embodied in a written document which included ''express provisions for participation in profits and being liable for loss in the proportion of their ownership.'' The tender of $7,500 and the refusal thereof were also asserted.

The third cause of action related to a conveyance by the respondent Edward M. Granz to his brother of one-half of the property at a time when the brother knew of the agreement between the appellant and Edward M. Granz.

In addition to denials in his answer which put in issue allegations of the first amended complaint, the respondent Edward M. Granz pleaded, as affirmative defenses, that there was a lack of consideration for the written document and that, in addition to the services which were claimed to have been rendered as alleged in the first cause of action, other services were rendered, including the negotiation of price and terms with the vendor, which constituted the services of a real estate broker or salesman, for the performance of which services the appellant was not licensed.

The trial court made findings of fact which were in part as follows: 1. On or about December 17, 1954, respondent Edward M. Granz signed and handed to appellant the written document which was set forth in the first amended complaint but there was no consideration therefor. 2. In March 1955, respondent Edward M. Granz notified the appellant orally and in writing that he withdrew and rescinded the offer contained therein. 3. On August 11, 1955, the appellant did tender and offer to respondent Edward M. Granz the sum of $7,500 for

an undivided one-fourth interest in the property but Granz refused to accept the money tendered and to convey an interest in the property. 4. The appellant and the respondent Edward M. Granz never entered into an agreement, oral or written, "to go into business together as a single joint venture for the purchase of any particular piece of real estate located in Lancaster." 5. It was not agreed, as a part of any written or oral agreement to go into business together, that the appellant would buy an undivided 25 per cent in the described parcel of real estate and that the respondent Edward M. Granz would own 75 per cent therein. 6. The appellant was not, at any time mentioned in his first amended complaint, a licensed real estate broker or salesman and that the services rendered by him to the respondent Edward M. Granz prior to December 17, 1955, "were the services which could be rendered only by a licensed real estate broker or salesman, which services included the negotiation of both the acreage to be purchased by the defendant Edward M. Granz and the purchase price thereof." Pursuant to the conclusion of law that the appellant was not entitled to any relief, judgment was entered, from which judgment the present appeal has been taken.

Inasmuch as the testimony of the respondent Edward M. Granz was to the effect that the appellant was not instrumental at all in the purchase of the particular property by that respondent, we must look to the appellant's own testimony so as to determine whether the findings of fact as to the nature of his activities find support therein. The appellant, a bail bondsman, had known Edward M. Granz since the early part of 1954. On August 14 or 15 of that year, the appellant talked to Granz on the telephone and told him that he had just received a call from a broker in Lancaster whose associate had 100 acres which he was going to put on the market because he needed $30,000 in cash. The appellant further said to Granz, "Eddie, you have been going up to Lancaster with me for three or four or five months. . . . You have always wanted to buy property with me and I told you that if anything really good comes up, a real good buy, that I would call you and we would buy the property together." He further testified that Granz said to him, "What do you want out of this?" The appellant replied as follows: "Eddie, I want to buy this property with you. I haven't the money at the present time, but you know I have money coming in on trust deeds all along on the property that I sold, and I want to buy a twenty-five percent interest in this property with you, and I want an

option for one year to give you the $7,500.00, and you know that you will get the $7,500.00.'' In response, Granz said that that was more than fair and suggested that they look at the property. On the following Saturday, the appellant and Granz went to Lancaster in the appellant's automobile and viewed the property. When asked by Granz as to what would happen if the property decreased in value, the appellant stated that: ''. . . if it did, I would take my proportionate share of the twenty-five percent interest that I will have as soon as I give you the $7,500.00.'' After viewing the property, they went to the office of the broker who owned the property. The owner, Irving Harris, returned with them to the property. Mr. Harris said that he was going to put 80 acres on the market and not 100 acres as the appellant had mentioned. He showed the appellant and Granz the 80 acres, which did not include the 20 acres along the railroad tracks. The appellant said that the owner's associate had told him that ''it would be a hundred acre parcel and we would have tracks'' and that they were only interested in the property if the 20 acres were included. Mr. Harris suggested that they return to his office to see if ''we can work it out.'' The appellant further said that he understood the price would be $300 an acre but Mr. Harris said that he was going to put it on the market at $350 an acre. The appellant replied that the owner's associate had told him that the price would be $30,000, not $35,000. Mr. Harris said that if that was so, the price would be $30,000. When they returned to the office, the owner examined some maps and said, ''I think my engineer will work out a deal where you can get the hundred acres and have the 20 acres along the tracks to be contiguous with the other acreage.'' The appellant replied, ''That's fine.'' He further said that the respondent Edward M. Granz had the $30,000 and would open an escrow. But Granz stated that he did not have the $30,000 then but could get it within a period of 30 days and wanted an option to purchase the property within that period. The appellant stated that he did not want to tell Mr. Harris or his associate that ''we are going to buy the property and then you ask for an option for 30 days.'' Mr. Harris said he would give the appellant an option for 30 days, but the appellant stated: ''Well, I won't take the option because I couldn't come up with the money in 30 days. All I am doing is buying a twenty-five percent interest of Eddie Granz' interest, hundred percent interest in the property. I could not come up with the $30,000.00.'' Mr. Harris agreed to give the option to

Granz if he was the appellant's friend. Whereupon the appellant said, "Well, you're crazy to do it, but if you want to, that's your property." Granz stated that he and the appellant were buying the property together and that he wanted to include the condition that the appellant approve the legal description of the property, the escrow instructions and the preliminary report. Later an escrow was opened and the appellant approved the escrow instructions and the preliminary report "possibly the first part of September" of 1954. Thereafter, the document of December 17, 1954, was signed by Granz. Therein it was stated that Granz gave to the appellant the option to buy from Granz on or before September 1, 1955, for $7,500 "an undivided share of 25%" in the real property. It was also provided therein that: "This option is not transferable to any other person or firm. It is understood and agreed that I, Edward M. Granz, the owner of the above mentioned real estate property, reserve the full rights to sell all or any part of above described real property, improve or grant any easements or other portions of said property to the best of my discretion. In the event any sale is made you will participate in profits or losses in accordance with your share as well as sharing any unforseen [sic] expenses that might occur."[1]

On cross-examination, the appellant stated that his testimony at the prior trial of the matter contained a substantially true account of his telephone conversation with Granz before the trip to Lancaster. A portion thereof was as follows: "I said, 'I want to buy a twenty-five percent interest in that property with you, but at the present time I haven't the $7,500.00 to put up; and if you buy the property, I want an option from you to purchase the property at the price you paid for it at my proportionate share of $7,500.00 within a period of one year.'" He then testified: "It was an agreement that we were buying the property together and the option was to give him the $7,500.00 in one year."

As to the matter of the price to be paid Mr. Harris, the vendor, the appellant testified as follows: "Q. But in any event, by your discussion with Mr. Harris, you were able to

---

[1] There was also provision made for purchase of the interest of one by the other as follows:

"You [appellant] will also be entitled to the first opportunity to buy any part of my holdings if I choose to sell.

"It is also understood and agreed that should you desire to sell all or any part of the 25% you will own in the above described property, you will give me the first opportunity to buy it at the same price offered to you, and if sold to someone else after my refusal I will reserve the same rights with the new buyer as outlined in this option."

arrange for purchase at $30,000.00 instead of his original request of $35,000.00, were you not? A. I think we bought—I think that was so, we bought the property for thirty instead of $35,000.00, yes, sir. Q. And that change in Harris' position was the result of your discussions with Harris, was it not, relating to Harris your previous discussion with Mr. Smith? A. That is right, yes, sir.''

As to the services he rendered to Granz as consideration for the option, the appellant testified in part: ''Well, when we agreed to buy it, I went up there; I found the property. Instead of paying $35,000.00 for the property, we bought it at $30,000.00.''

Under the written instrument upon which the appellant relies, he was not required to do anything but was given an option to buy an interest in the property for the sum of $7,500 on or before September 1, 1955. ''An option is by no means a sale of property, but is the sale of a right to purchase.'' (*Hicks* v. *Christeson*, 174 Cal. 712, 716 [164 P. 395] ; see also *Seeburg* v. *El Royale Corp.*, 54 Cal.App.2d 1, 4 [128 P.2d 362] ; *Warner Bros. Pictures, Inc.* v. *Brodel*, 31 Cal.2d 766, 772 [192 P.2d 949, 3 A.L.R.2d 691] ; *Transamerica Corp.* v. *Parrington*, 115 Cal.App.2d 346, 351-352 [252 P.2d 385].)

 As expressed by this court in *Prather* v. *Vasquez*, 162 Cal.App.2d 198 [327 P.2d 963], at page 204: ''An option to buy is a proposal by which the owner of property invests another with the exclusive right to purchase it at a stipulated price within a limited or reasonable time without imposing any obligation upon the party to whom it is given. (25 Cal. Jur. 506, 507.) Where no consideration has been given for an option, it may be revoked by the optionor at any time prior to its acceptance. (*Canty* v. *Brown*, 11 Cal.App. 487 [105 P. 428] ; *Raymer* v. *Hobbs*, 26 Cal.App. 298 [146 P. 906].)'' In the present case, the trial court found that the option had been withdrawn prior to the attempt by the appellant to exercise his rights thereunder. If there was no consideration given by the appellant for the option, such withdrawal was effectual insofar as the appellant was concerned. The true consideration or the lack of consideration for a contract may always be shown. (*Prather* v. *Vasquez*, *supra*, 162 Cal. App.2d 198, 204.) The only consideration established by the appellant was the rendition of services to Edward M. Granz in the matters which resulted in the purchase of the property by Granz. If such services consisted of acts the doing of which by the appellant was prohibited by law because he was not a

licensed real estate broker, then, of course, they could not serve as consideration for the promise of Granz to sell or transfer an interest in the property to the appellant. (See *Del Rey Realty Co.* v. *Fourl,* 44 Cal.App.2d 399, 402-404 [112 P.2d 649] ; *Tatterson* v. *Kehrlein,* 88 Cal.App. 34, 52 [263 P. 285].) He could not prevail as against the respondents herein whether he attempted to avail himself of the remedy of specific performance (see *Seymour* v. *Shaeffer,* 82 Cal.App.2d 823, 825-826 [187 P.2d 95] ; *Jaenicke* v. *Davidson,* 290 Mich. 298 [287 N.W. 472]) or otherwise sought relief. The same reasoning would apply even if the writing should be construed to be an agreement whereby, upon exercise of the option, the parties were to be participants in a joint adventure because under the writing the appellant undertook no duties in connection with the enterprise prior to the time that he should exercise his option. (*Cf. Brewer* v. *Ewart,* 210 Ala. 292 [97 So. 910, 911].) Consequently, it is necessary to determine the legality of the services rendered by the appellant.

Under the law of this state, one may not act as a real estate broker unless licensed as such. (Bus. & Prof. Code, § 10130.) A real estate broker ''is a person who, for a compensation . . . negotiates the purchase or sale or exchange of real estate . . . for another or others.'' (Bus. & Prof. Code, § 10131.) One act is sufficient to bring a person within the applicable provisions of the Business and Professions Code. (Bus. & Prof. Code, § 10134.) An action may not be brought or maintained for the collection of compensation for such an act without alleging and proving that the plaintiff was duly licensed at the time the alleged cause of action arose. (Bus. & Prof. Code, § 10136.)

While a person does not act as a broker if his activity is limited to arranging an introduction between an owner and a prospective purchaser (*Freeman* v. *Jergins,* 125 Cal.App.2d 536, 552 [271 P.2d 210] ; *Crofoot* v. *Spivak,* 113 Cal.App.2d 146, 148 [248 P.2d 45] ; *Palmer* v. *Wahler,* 133 Cal.App.2d 705, 710 [285 P.2d 8] ; *Pawlak* v. *Cox,* 148 Cal.App.2d 294, 297 [306 P.2d 619]), activity beyond that point may bring him within the regulated field. As stated by Mr. Justice McComb in *Abrams* v. *Guston,* 110 Cal.App.2d 556, at page 557 [243 P.2d 109] : ''There is no merit in the contention that plaintiff was not a broker but merely a middleman and adviser to defendant, for it is conceded that he participated in the preparation of an option which was given to Mr. Carder. The law is established that if a broker takes any part in the negotia-

tions, no matter how slight, he is not a middleman but is a broker. (*Rhode* v. *Bartholomew,* 94 Cal.App.2d 272, 280 [7] [210 P.2d 768].)''

In *Del Rey Realty Co.* v. *Fourl, supra,* 44 Cal.App.2d 399, the plaintiff sought to recover under an agreement for the payment of a certain per cent of the proceeds of oil produced from certain premises. The consideration for the agreement was the rendition of services in obtaining an oil sublease on the premises. Such services were rendered by an unlicensed person. The court there said, at pages 403-404: ''As we view the situation in the present case, the following are the controlling considerations. The original agreement for the performance of services by an unlicensed person and for the payment of compensation for such services was illegal. The terms of said agreement were carried into the instrument dated September 7, 1934, which instrument left certain obligations to be performed in the future. This action was brought for the enforcement of an alleged obligation of the defendant under said instrument. The obligation which plaintiff was seeking to enforce was not an obligation which arose independently of the terms of the original illegal agreement (see 6 Cal.Jur. 160) but was an obligation which arose out of the terms thereof as carried into the instrument of September 7, 1934. Under these circumstances, the action was, in substance and effect, an action to enforce the terms of the original illegal agreement and we are of the opinion that the defense of illegality would have been available to defendant as against plaintiff's assignor and we are further of the opinion that said defense was available to defendant as against plaintiff. (*Firpo* v. *Murphy,* 72 Cal.App. 249 [236 P. 968].)''

The appellant contends that he and Granz were acting as joint adventurers and were, in effect, buying the property together. (*Cf. Tufts* v. *Mann,* 116 Cal.App. 170 [2 P.2d 500].) The question of whether a joint adventure was created was for the determination of the trial court under the evidence and the inferences to be drawn therefrom. (*Goldberg* v. *Paramount Oil Co.,* 143 Cal.App.2d 215, 220 [300 P.2d 329].) It is clear from the record in this case that the trial court was well justified in reaching the conclusion that the agreement of the parties was that the ownership of the property was to be acquired by Granz and that as compensation for his services to Granz the appellant would receive an option to purchase an interest in the property for an amount calculated upon the basis of the cost to Granz, which option he

could exercise at a later time if he so desired. This, of course, was an attractive arrangement for the appellant in view of the anticipated increase in value of the property within the period of time in which the option could be exercised. This court cannot disturb the finding of the trial court that the relationship was not that of joint adventurers but, rather, that the appellant acted as the agent of Granz for compensation. (See *Weber* v. *Tonini,* 151 Cal.App.2d 168 [311 P.2d 132].)

As is clear from the summary of the evidence hereinabove, there was substantial support in the evidence for the finding of the trial court that the acts of the appellant as the agent of Granz "included the negotiation of both the acreage to be purchased by the defendant Edward M. Granz and the purchase price thereof."[2] With that factual determination by the trial court we are not at liberty to interfere. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157]; see *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].) Under the applicable law, as set forth herein, the appellant's acts were those of a real estate broker. Not having procured the requisite license, he can predicate no rights on such acts.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 4, 1960, and appellant's petition for a hearing by the Supreme Court was denied December 7, 1960.

---

[2]In respondents' brief, reference is made to an addition added by amendment to paragraph 1 of the original complaint which addition was omitted from the first amended complaint. The language of the addition was in part as follows: "That the consideration for said option agreement was the rendition of services, at the request of defendant, by plaintiff in procuring and negotiating the deal for the purchase by defendant of the real property in question, and the performance by plaintiff of said services. . . ." While such language of the superseded pleading could have been used for the purpose of impeaching the appellant (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 384 [267 P.2d 257]), there was no attempt to so use it in the present case. Consequently, we have disregarded such portion of the respondents' argument in determining the merits of the present appeal.