[Civ. No. 19126.   First Dist., Div. One.   Jan. 10, 1961.]

ALMA J. KELLEY et al., Respondents, v. FRANK G. ROUSE, JR., et al., Defendants; ATHERMAN INVESTMENT COMPANY (a Corporation), Appellant.

Christin & Davis and Leonard J. R. Davis for Appellant.

Rankin, Oneal, Luckhardt & Center, Maurice J. Rankin and Charles E. Luckhardt for Respondents.

TOBRINER, J.—As we shall point out, the bare option, here, lacking consideration, could not prevent the option givers' withdrawal of the option. In view of the court's finding that the situation alerted the purchaser of the option to ascertain its true nature, the purchaser could not effectively contend that it relied upon the recitals of consideration in the option, and that therefore the option givers were estopped from showing an absence of consideration.

An attempt to enforce an option for 31½ acres of land in Santa Clara County created this litigation. The history of the option begins with its execution on February 22, 1955, to defendant Rouse by respondent ranchowners Gilford E. and Alma J. Kelley. On the following day it was recorded, but on May 27, 1955, respondents served on Rouse a "Notice of Withdrawal, Cancellation and Rescission" of the option. This document was not recorded. Then on June 20, 1956, appellant, Athermen Investment Company (sued herein as Atherman Investment Company), purchased the option from Rouse for $2,000, and in the instrument specifying the terms of the transaction, Rouse, the seller, sets out "that he knows of no affirmative action or proceeding commenced by Gilford E. Kelley or Alma J. Kelley to rescind, cancel, or annul said option, nor to forestall or defeat the performance thereof. . . ." On February 15, 1957, appellant purported to exercise the option, recording a written document to that effect, but respondents refused to prepare the notes and deeds of trust required by the terms of the option and, instead, brought this action to quiet title.

The terms of the option extended wide prerogatives to Rouse but no coincident cash payments to the ranchowners. While Rouse paid nothing for the option, it entitled him to purchase any or all of the property at the price of $2,800 per acre. Even upon the exercise of the option, Rouse was to pay no cash; in such event, payments on a note in the amount of $30 per month upon the purchase price of each acre would begin one year after the execution of the note or, if such event occurred sooner, upon the sale of a completed building. The monthly installments would not necessarily constitute a first lien upon the lots since first deeds of trust to cover construction loans up to $11,000 could be placed upon each acre. Although the option stipulated that each acre could be purchased for $2,800, respondents contended that the acre upon which their home stood was, as improved, worth $40,000, and that they had rejected an offer of $11,000 for the two acres known as ''the Pasture Hill.''

The testimony adduced at the trial divides into two parts. The first involves the option transaction itself; the second, the purchase of the option.

The thread of respondents' avowed misunderstanding of the transaction runs through all of their testimony. Respondent Alma J. Kelley testified that she never considered selling more than the ''back portion'' of the property, which consists of about nine acres. She further stated that she had never engaged in real estate transactions, except to sign her name a few times; that she did not know the meaning of real estate terms; that she did not read the entire option or procure her attorney's examination of it before she signed it; that she first learned on May 27th that the option by its terms included the entire property. In the above respects respondent Gilford E. Kelley corroborated his wife's testimony.

Rouse's contrasting testimony set forth that the entire piece of property had been discussed by the parties, and, with the knowledge of respondents, included in the option. Indeed, he stated that he conferred with both Kelleys as to the content of the option, read it to them, and explained its provisions. Then, before a notary public, they signed the option. Rouse admitted that he had orally agreed that the back portion of the property should be first developed and that this understanding had not been incorporated in the option agreement. He admitted, too, that he had paid nothing for the option, contending that he later expended sums for preliminary work in develop-

ing the property. Finally, he admitted that he received the notice of withdrawal but stated that he relied upon his attorney's advice that the instrument was abortive.

The testimony as to the assignment of the option consisted principally of that of Dorcich, the realtor who handled the transaction, several officers and shareholders of appellant, and one Mackay, who headed that group. Dorcich testified that when he took appellant's shareholders to view various property investment possibilities, he told them that the option "wasn't clear, and there was [a] possibility of problems when someone would want to go ahead and exercise the option" and " '[i]t's an option that might have some merit, but it might take a lawsuit to square the thing away.' " When asked if he knew at that time that there had been an attempted rescission of the option, he stated, "Not in that many words." He added that "Mr. Gates [one who had said he had the option to sell] had mentioned to me that he was having some problems with the owners of the property, over the option" and "it might be a little difficult to enforce." He insisted he had related to Mackay and to the group generally the substance of Gates' remarks.

Several of the officers and shareholders of appellant testified concerning the purchase of the option. Each denied knowledge of an attempt by respondents to rescind the agreement; each denied that Dorcich had stated or implied that the option would not be a good investment. None of them ever met respondents, viewed the property, or made any inquiry regarding a possible rescission of the option.

Mackay, the principal actor in the group, denied knowledge of the withdrawal of the option, but stated that as to the option agreement he had made no investigation except that he had had his attorney read it. He did not talk to respondents, Rouse or Gates, and he made no inquiry regarding the amount of consideration paid for the option. He stated that Dorcich and he went to an attorney, who drew the assignment agreement, including the provision that asserted that the seller knew of no affirmative action to annul or rescind the option. Mackay denied knowledge of any oral agreement between Rouse and respondents that the rear portion of the property be first developed.

The trial court found, among other matters, that respondents received no consideration for the alleged option at the time of the signing or thereafter; that the terms of the option "are neither just nor reasonable"; that the option is "too un-

certain and indefinite in its terms to constitute an enforcible or binding agreement between the parties''; that respondents ''rescinded'' the option, notice of which they gave appellant's assignor; that at the time of assignment, no option existed and assignee-appellant was ''aware of'' respondents' ''previous . . . rescission'' of the option; that appellant ''did not rely upon the language of said option or the recitals'' in the assignment of the option that it was then in force; that respondents ''are not estopped to deny that they received adequate consideration for said option''; that any action taken or expense incurred by appellant's assignor or appellant ''was not at the instance or with the knowledge of plaintiffs, nor agreed by them to sonstitute any consideration''; and that the denials and allegations of respondents in their answer to the cross-complaint (including the allegation of fraud) were true. It likewise found to be true the allegation in respondents' answer to appellant's cross-complaint that appellant ''had notice of the rescission and cancellation of said option . . . or had notice of such facts as to put . . . [appellant] on inquiry as to . . . [respondents'] right to withdraw from said option.'' The court concluded that defendant Rouse and appellant Athermen had no interest in the real property and that respondents were entitled to a judgment decreeing them to be the owners of the property and quieting title in respondents as against Rouse and Athermen.

As we shall point out, respondents could properly revoke this option, which lacked the protective covering of consideration; and respondents likewise could make their showing of rescission despite the argument that an estoppel blocked that contention. We, therefore, consider, first, the issue as to consideration, and, second, the issue of estoppel. Under the heading of the former we shall show that the alleged consideration can neither rest upon the recitals of the option nor the option holder's alleged actions in furnishing such consideration after its execution.

■ Although it is true that the option recites that respondents executed it for a consideration, and that such a recital raises a presumption of consideration (1 Witkin, Summary of California Law, Contracts, § 69, pp. 72-73), the presumption may be rebutted (Code Civ. Proc., § 1962, subd. 2; Witkin, *idem*). ■ An option is a contract to preserve an offer for future acceptance but unless it is locked within the sheath of consideration it may be withdrawn (1 Witkin, Summary of California Law, Contracts, § 51, p. 57). ■ As the

court states in *Prather* v. *Vasquez* (1958), 162 Cal.App.2d 198, 204 [327 P.2d 963], "Where no consideration has been given for an option, it may be revoked by the optionor at any time prior to its acceptance. [Citing cases]."

The trial court found that respondents received no consideration for the option at the time of its execution or thereafter. The many cases cited by appellant (*Schader* v. *White* (1916), 173 Cal. 441 [160 P. 557]; *Smith* v. *Bangham* (1909), 156 Cal. 359 [104 P. 689, 28 L.R.A. N.S. 522]; *Westwood Temple* v. *Emanuel Center* (1950), 98 Cal.App.2d 755 [221 P.2d 146]; *Drullinger* v. *Erskine* (1945), 71 Cal.App.2d 492 [163 P.2d 48]; *O'Donnell* v. *Lutter* (1945), 68 Cal.App. 2d 376 [156 P.2d 958]; *Marsh* v. *Lott* (1908), 8 Cal.App. 384 [97 P. 163]) do not establish the irrevocability of the instant option. In each of appellant's cases the party rendered some consideration; appellant's assignor rendered none.

Nor did appellant's assignor's performance, postexecution of the option, but before its rescission, furnish consideration. Appellant strings together an assortment of Rouse's activities that form no binding chain of consideration. Rouse consulted with lending institutions regarding the financing of the proposed development of the property, commenced a topographical study and survey of the property, surveyed a portion of the property, and prepared and recorded a map of that latter part.

Two considerations dispose of appellant's contention. In the first place, the trial court could very properly have found Rouse engaged in these activities, not to extend consideration to respondents, but to determine whether or not he desired to exercise the option. In the second place, even assuming that these actions constituted a detriment to Rouse, they were found by the trial court not to have been the consideration bargained for by the parties. Whatever the claimed detriment these acts caused Rouse, and whether or not Rouse undertook them for his own or for respondents' benefit, they must be such as were the substance of the parties' bargain. (*Simmons* v. *California Institute of Technology* (1949), 34 Cal. 2d 264, 272 [209 P.2d 581]; *Prather* v. *Vasquez, supra,* 162 Cal.App.2d 198, 205; *Forgeron Inc.* v. *Hansen* (1957), 149 Cal.App.2d 352, 360 [308 P.2d 406]; Rest., Contracts, § 75, comment b.) The option itself does not specify these peripheral activities as its consideration: it refers only to "good, valuable and adequate consideration." The trial court was

justified in concluding that these activities did not furnish consideration for the option (*Bard* v. *Kent* (1942), 19 Cal. 2d 449, 452-453 [122 P.2d 8, 139 A.L.R. 1032]) ; it specifically found that "any action taken or expense incurred by defendants' assignee [*sic*] . . . or by . . . [appellant] was not at the instance or with the knowledge of plaintiffs, nor agreed by them to sonstitute any consideration for said option, and same did not constitute any consideration for said option or any obligation on the part of plaintiffs to convey the property to ... [appellant]."

If, then, the option lacked consideration, we turn to the next issue as to whether or not respondents were estopped from asserting that defense. Appellant's argument on this score succumbs to the contrary findings of the trial court.

Although appellant asserts its reliance upon the recital in the option acknowledging receipt of "good, valuable and adequate consideration," that reliance cannot stand in the face of the trial court's findings that appellant had such notice as to put it upon inquiry as to respondents' rescission and right to rescind. The trial court found " [t]hat all the denials and allegations contained in Plaintiffs' [respondents'] answer to defendants' [appellant's] cross-complaint are true," and among those allegations was the charge that appellant "had notice of the rescission and cancel[l]ation of said option . . . , or had notice of such facts as to put . . . [appellant] on inquiry as to . . . [respondents'] right to withdraw from said option." Additionally, the court found that appellant was fully aware of the fact of rescission and did not rely on recitals in the option or assignment. We need not, however, rest upon the finding that appellant knew of the rescission; it is enough that the court found appellant had notice of facts sufficient to put it on inquiry regarding respondents' right to withdraw; its inquiry would have disclosed that right because of the lack of consideration.

Since the question of whether the situation is such as to put the party upon inquiry composes a question of fact, the findings of the trial court here must resolve it.     The principle has been expressed in many cases: "Whether appellant had notice of circumstances sufficient to put him on inquiry was a question of fact to be determined by the jury or the trial judge." (*Shapiro* v. *Equitable Life Assur. Soc.* (1946), 76 Cal.App.2d 75, 88 [172 P.2d 725].) In *Barthelmess* v. *Cavalier* (1934), 2 Cal.App.2d 477 [38 P.2d 484], the court said, "We conclude, therefore, that the duty to inquire

exists, and except where the evidence is legally conclusive upon the subject of good faith, it presents a question for the jury. And we are of the view that the circumstances surrounding the transaction in this case were such as to call for submission to the jury.'' (Pp. 491-492.) The court also stated, ''[I]n dealing with instruments which are not negotiable the buyer will not be relieved of the duty to inquire, if the circumstances are such as to call for its exercise.'' (P. 491.) (See also *Ocean Shore R.R. Co.* v. *Spring Valley Water Co.* (1933), 218 Cal. 86, 88 [21 P.2d 588].)

The court's findings in this regard rest upon substantial evidence. The testimony of Dorcich, which for this purpose must be accepted as true and final (*Anglo California Nat. Bank* v. *Far West Lbr. Co.* (1957), 152 Cal.App.2d 284, 286 [313 P.2d 10]), certainly alerted appellant to an investigation of the reasons why respondents did not want to conclude the transaction, the necessity for ''a lawsuit to square the thing away,'' the lack of clarity in the agreement, and the ''possibility of problems'' in its exercise. These warning signals negate a vacuous acceptance of the option by appellant when an inquiry would have disclosed its lack of consideration and its subsequent withdrawal. In the words of section 19 of the Civil Code: ''Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.''

Appellant vainly invokes the application of section 90 of the Restatement of Contracts to the effect that: ''A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'' This precept does not apply here, however, since the trial court found that the facts put appellant upon inquiry regarding respondents' right to rescind. Nor does *Drennan* v. *Star Paving Co.* (1958), 51 Cal. 2d 409 [333 P.2d 757], cited by appellant, pertain to the present case; there the Supreme Court affirmed a finding of reasonable reliance resulting in a prejudicial change of position. In this case the findings indicate no such reasonable reliance and no such change of position.

These considerations make unnecessary the analysis of a further basis for the judgment in the finding of the trial court

that the option agreement emanated from the fraud of Rouse. Likewise, we may summarily dispose of appellant's objection .that the court did not rule upon its motion to amend the complaint to conform the option to the alleged oral agreement that the acre where respondents' residence was located would be purchased only after the acquisition of the remaining acreage. The court's findings against all the affirmative allegations rendered the motion academic.

In summary, we believe that the trial court properly concluded that, despite appellant's subsequent purchase of it, respondent ranchowners, here, could withdraw their option. The option, naked of consideration, cannot cloak itself in an estoppel which arises from facts which themselves prompted inquiry.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.