Harry GONICK and Eleanor
Gonick, Plaintiffs,

v.

DREXEL BURNHAM LAMBERT IN-
CORPORATED and Does 1
through 10, inclusive, Defendants.

No. C–88–0517 MHP.

United States District Court,
N.D. California.

Dec. 12, 1988.

**982**

Michael J. Lawson and Laura R. Kenney of Steefel, Levitt & Weiss, San Francisco, Cal., for Drexel Burnham Lambert Inc.

Brian McCarthy of McCarthy, Leonard & Spain, Dublin, Cal., for plaintiffs Harry and Eleanor Gonick.

## MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiffs brought this action against their stock brokerage firm, Drexel Burnham Lambert Incorporated ("Drexel"), alleging violation of the antifraud provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and asserting several pendent state claims. The action is now before the court on defendant Drexel's motion to compel arbitration, to stay these proceedings pending completion of arbitration and to impose sanctions. Having considered the arguments and supporting documents submitted by the parties, for the following reasons, the court grants Drexel's motion to compel arbitration. This action is therefore stayed pending conclusion of the arbitration proceedings. The court grants Drexel's motion for sanctions and awards defendants reasonable attorneys' fees and costs.

## BACKGROUND

Before 1977, plaintiffs maintained an account with Sutro & Co., a securities firm, for which Jack Ross acted as account executive. In early 1977, Ross left Sutro and accepted employment with Drexel at its Oakland office. Ross solicited plaintiffs' business on behalf of Drexel, promising them "preferred customer" treatment. Plaintiffs opened an account with Drexel and directed Sutro to transfer the securities in plaintiffs' Sutro account to their Drexel account.

On June 24, 1977, Drexel sent plaintiffs certain documents to be signed and returned to Drexel. The transmittal letter stated that "Stock Exchange regulations require that we have your signature on these forms." Plaintiffs signed the Joint Account Agreement, a copy of which is attached as Exhibit A to the Hoover Declaration, on June 28, 1977. On August 15, 1977, presumably in response to a later request by Drexel, plaintiffs signed a Customer's Agreement, a copy of which is at-

tached as Exhibit B to the Hoover Declaration.

The Joint Account Agreement contains an arbitration provision reading in part:

Any controversy between [Drexel] and the undersigned arising out of this account or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Stock Exchange, Inc., or the American Arbitration Association or the New York Stock Exchange, Inc., as the undersigned may elect.

Hoover Dec.Ex. A para. 3. The arbitration provision in the Customer's Agreement is substantially identical. Hoover Dec.Ex. B para 16. Plaintiff Harry Gonick was a practicing attorney at the time the Joint and Customer's Agreements were presented for plaintiffs' signatures.

On August 29, 1987, plaintiff Harry Gonick met with a Drexel official and threatened to file suit against Drexel for alleged false representations which affected Gonick's stock transactions. Gonick Dec. para. 10. After that meeting, Harry Gonick attempted unsuccessfully to locate his copies of the Joint Account and Customer's Agreements. *Id.* para. 11. He telephoned a Drexel officer, Jack Ross, and asked Ross to send him a copy of the Customer's Agreement that Gonick and his wife had signed. Ross told him the original agreements had been sent to New York and offered to send a blank, unsigned copy of the Customer's Agreement. Gonick agreed. *Id.* Ross sent him the unsigned agreement attached as Exhibit 3 to the Gonick Declaration. That copy of a Customer's Agreement contains an arbitration provision similar to that in the Customer's Agreement signed by plaintiffs except that the provision is prefaced by the statement that "[t]he following agreement to arbitrate does not apply to any controversy for which a remedy may exist pursuant to an express right of action under the federal securities laws." Gonick Dec., Ex. 3 para. 16.

On March 8, 1988, plaintiffs' attorney received copies of the original, signed Joint Account and Customer's Agreements from Drexel. Gonick Dec. para. 14. About two weeks later, Harry Gonick called Ross's office again and requested another copy of the agreements plaintiffs had signed. *Id.* para. 15. A few days later, Gonick received another unsigned copy of the Customer's Agreement containing the "express right of action" exclusion from its arbitration provision and an unsigned copy of a Joint Account Agreement containing the same exclusion. *Id.* Those documents are attached as Exhibits 4 and 5 to the Gonick Declaration.

Plaintiffs filed this action against Drexel on February 18, 1988, asserting one claim under the federal securities laws and several pendent state claims. Plaintiffs identify their federal claim only as arising under "the anti-fraud provisions of the federal securities laws, 15 USC, Section 78a, et seq. (Chapter 2B)." The court interprets the federal claim as asserting a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

Instead of answering the complaint, Drexel filed a motion to compel arbitration, to stay legal proceedings and for sanctions on April 18, 1988. Plaintiffs oppose Drexel's motion on a number of grounds.

## DISCUSSION

### A. *Motion to Compel Arbitration*

The Federal Arbitration Act ("Act"), 9 U.S.C. §§ 1–14, expresses a strong federal policy favoring arbitration. *Shearson/American Express v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed. 2d 185 (1987). Section 2 of the Act provides that a written agreement to submit a controversy involving commerce to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court held recently that arbitration agreements may be enforced as to claims arising under section 10(b) of the Exchange Act. *McMahon,* 107 S.Ct. at 2343.

Plaintiffs do not dispute that the arbitration agreements in the Joint Account and Customer's Agreements would, if valid, require them to submit their claims to arbi-

tration under the terms of the Act. Plaintiff's opposition to the motion to compel is based instead on arguments that the arbitration agreements are invalid upon a number of grounds existing "at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2.

■■■ The effect of section 2 of the Act "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Before federal law governing arbitrability can be applied, however, the court must determine, using general principles of contract law, whether the parties ever entered into an arbitration agreement at all. While a challenge to the validity of the entire contract is subject to arbitration, a challenge specifically directed to the validity of the arbitration agreement must be addressed by the court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). The Supreme Court held in *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987), that state law may be applied to determine the validity of an arbitration agreement "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."

### I. *Excessive Economic Power*

■■■ Plaintiffs apparently contend that inclusion of a broad arbitration clause in an account agreement constitutes abuse of economic power and is therefore unconscionable. This argument is foreclosed by the Ninth Circuit's recent decision in *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282 (9th Cir.1988). The Ninth Circuit held that "agreements to arbitrate disputes in accordance with SEC-approved procedures are not unconscionable as a matter of law." *Id.* at 286. The Securities Exchange Commission "has specifically approved the arbitration procedures of the New York Stock Exchange, the American Stock Exchange, and the National Association of Securities

Dealers." *McMahon*, 107 S.Ct. at 2341. The arbitration agreements at issue here allow plaintiffs to elect arbitration in accordance with the procedures of the New York Stock Exchange or the American Stock Exchange, and the parties have apparently agreed that any arbitration compelled by this court would be "in accordance with the rules of the National Association of Securities Dealers." Cullen Dec., Ex. D. Plaintiffs' unconscionability argument thus fails. *See Cohen*, 841 F.2d at 286.

In response to this court's observation that plaintiffs' arguments on this and other issues fail to cite any authorities, plaintiffs pointed out their earlier citation to *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Plaintiffs, however, ignore the clear language of *McMahon* which discussed those three cases and rejected their rationales for disfavoring arbitration, in particular the inequality of bargaining power. *See McMahon*, 107 S.Ct. at 2339. Plaintiffs' arguments on this issue were discredited in *McMahon* and completely rejected in *Cohen* which followed and interpreted *McMahon*.

### II. *Absence of Consideration*

■■■ Plaintiffs next argue, citing not a single case, that no consideration existed for their agreement to arbitrate disputes arising under the account agreements. Recital of consideration in a contract creates a presumption of consideration. *Kelley v. Rouse*, 188 Cal.App.2d 92, 96, 10 Cal.Rptr. 235 (1961). The Joint Account Agreement recites as consideration Drexel's "carrying a joint account for the undersigned." Hoover Dec., Ex. A para. 1. The Customer's Agreement recites as consideration Drexel's "accepting one or more accounts of the undersigned." *Id.* Ex. B line 1. Plaintiffs have produced no evidence to rebut the presumption of consideration raised by those recitals.

### III. *Fraudulent Concealment*

■ Plaintiffs argue that the arbitration provisions are invalid because Drexel fraudulently concealed their illegality. Plaintiffs cite only *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), in support of their argument. *Wilko* did not hold broad arbitration clauses *illegal,* however; it merely held them *unenforceable* with respect to claims arising under section 12(2) of the Securities Act of 1933, 15 U.S. C. § 77*l*(2). 346 U.S. at 437–38, 74 S.Ct. at 188–89. The Ninth Circuit did not extend *Wilko's* unenforceability holding to claims under the Securities Exchange Act until 1981. *See De Lancie v. Birr, Wilson & Co.,* 648 F.2d 1255 (9th Cir.1981). Again, these provisions were merely unenforceable, not illegal. If the parties wished to proceed to arbitration rather than assert the non-enforceability in court, they could do so and were free to place their disputes before an arbitrator.

Plaintiff Harry Gonick was a practicing lawyer at the time Drexel presented him with the agreements at issue. Plaintiffs do not allege that they made any inquiry whatsoever as to the content or interpretation of the arbitration provisions. Plaintiffs do not contend that they failed to read or understand the arbitration provisions; they argue merely that the provisions are rendered invalid by Drexel's failure to explain to them that they could not at that time be compelled to arbitrate a certain class of disputes. An omission does not constitute fraud unless a plaintiff can establish that the defendant "had a duty to disclose the fact at issue." *Cohen,* 841 F.2d at 287. Plaintiffs argue, without citing any authority, that Drexel owed plaintiffs a fiduciary duty to disclose the state of the law governing the enforceability of arbitration agreements.

The court has been unable to identify a single case supporting plaintiffs' argument, despite examination of numerous cases involving broad arbitration agreements. The SEC's promulgation in 1983 of 17 C.F.R. § 240.15c2–2, making it a fraudulent practice for brokers to fail to disclose to customers the nonenforceability of arbitration clauses as to disputes arising under the federal securities laws, suggests that customer agreements containing broad arbitration provisions such as those at issue here were in widespread use through 1983. Plaintiffs provide no basis for their argument that nondisclosure *prior* to the 1983 promulgation of section 240.15c2–2 (since rescinded) constituted fraudulent concealment.

Most importantly, this argument is illogical. In essence to amounts to this: plaintiffs signed an agreement containing an unenforceable provision; the unenforceability of this provision was not disclosed to them by defendant; this provision has been rendered enforceable by recent case law developments and plaintiffs should receive the benefit of the earlier non-disclosed unenforceability because the provision may now be enforced. This makes no sense.

For all of these reasons, plaintiffs' fraudulent concealment argument completely fails.

### IV. *Affirmative Misrepresentations*

■ Plaintiffs argue that the statement in the transmittal letter of June 24, 1977, accompanying the Joint Account Agreement that "Stock Exchange regulations require that we have your signature on these forms" constituted fraudulent misrepresentation. Plaintiffs have, however, presented absolutely no evidence suggesting that the statement in question was untrue. Further, the statement clearly applies to the Joint Account Agreement as a whole rather than specifically to the arbitration agreement. Issues involving fraud in the inducement of the entire contract are for the arbitrator rather than the court to decide. *Prima Paint,* 388 U.S. at 403–04, 87 S.Ct. at 1805–06; *Cohen,* 841 F.2d at 286–87. Finally, plaintiffs have alleged that the transmittal letter accompanied only the Joint Account Agreement. Gonick Dec. para. 5. Even if the transmittal letter were found to be fraudulent, plaintiffs would still be bound to arbitrate this dispute by the terms of the Customer's Agreement.

## V. *Lack of Mutuality*

Plaintiffs contend that the arbitration agreements are invalid for lack of mutuality because only plaintiffs and not defendants are required to submit disputes to arbitration. That contention is simply wrong. The arbitration provisions in both agreements require that "[a]ny controversy between [Drexel] and the undersigned ... shall be settled by arbitration." Hoover Dec., Ex. A para. 3; Ex. B para. 16. The agreements thus clearly bind both parties to settle their disputes by arbitration.

## VI. *Estoppel*

■ Once again without citing any authority, plaintiffs argue that Drexel should be estopped from enforcing the arbitration provisions in the agreements signed by plaintiffs because Drexel sent plaintiffs unsigned copies (apparently updated versions) of the agreements containing different arbitration provisions. They argue that Drexel should instead be held to the arbitration provision contained in the blank agreements, which excludes from mandatory arbitration claims "for which a remedy may exist pursuant to an express right of action under the federal securities laws." Gonick Dec., Ex. 4 para. 16; Ex. 5 para. 7.

At the outset, Drexel correctly points out that plaintiffs have not asserted any claims for which an express right of action exists under the federal securities laws. While courts have held that section 10(b) creates an *implied* private right of action, the statute itself does not create an express private right of action. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 513, 94 S.Ct. 2449, 2454, 41 L.Ed.2d 270 (1974). Plaintiffs therefore cannot rely on the arbitration provisions in the agreements they did not sign to aid them in their opposition to this motion.

■ In any case, plaintiffs have not adequately alleged that defendants waived their right to arbitration. A plaintiff seeking to prove waiver of a contractual right to arbitrate must show that the defendant performed acts inconsistent with the right to arbitrate the dispute. *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir.1986). Drexel first requested plaintiffs to submit their dispute to arbitration on March 7, 1988, less than a month after the complaint was filed. Cullen Dec., Ex. A. When plaintiffs indicated their unwillingness voluntarily to submit the dispute to arbitration, Drexel brought this motion to compel. Drexel thus acted consistently with its right to arbitrate the dispute from the outset of this litigation. Sending plaintiffs unsigned copies of what were obviously standard form agreements, of the sort that are ordinarily updated from time to time in the normal course of business, was not an act sufficiently inconsistent with Drexel's intent to arbitrate this dispute to constitute a waiver of the right to arbitrate.

## VII. *Preferred Customer Status*

■ Plaintiffs contend that their "preferred customer" status entitles them to the benefit of the arbitration provisions in effect at the time their dispute with Drexel arose. The court holds that there is no legal basis for plaintiffs' contention. Under the Federal Arbitration Act, the governing federal law, the arbitration agreements signed by plaintiffs are enforceable unless the agreements are invalid under California law governing the formation of contracts in general. *See Perry*, 107 S.Ct. at 2527 n. 9. Plaintiffs' argument regarding "preferred customer status" has no bearing on the critical issue of whether the parties made a valid agreement embodied by the arbitration provisions in the agreements signed by plaintiffs in 1977.

## VIII. *Rule 15c2-2*

The Ninth Circuit has recently held that an arbitration agreement violating SEC Rule 15c2-2, 17 C.F.R. § 240.15c2-2, is not invalid for that reason because the SEC has rescinded Rule 15c2-2 in view of the Supreme Court's decision in *McMahon*. *Cohen*, 841 F.2d at 288. Plaintiffs' argument that the arbitration clauses at issue here should be held invalid because Drexel violated Rule 15c2-2 is therefore without merit.

## IX. *Expense of Arbitration*

██ Plaintiffs' argument that Drexel's motion to compel arbitration should be denied because arbitration might in this case turn out to be more expensive than litigation is without foundation in federal law.

## B. *Motion for Sanctions*

[12] Defendant moves for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. As stated above, defendant offered to proceed to arbitration, proferred its authorities to plaintiffs and attempted to avoid bringing this motion. The complaint and plaintiffs' responsive papers raise serious questions about compliance with Rule 11. While the absence of case authority or other authorities is not itself dispositive, it is indicative that a party's position is not well-founded in law or adequately researched. In this case there is not only an absence of cited authority, the plaintiffs' arguments fly in the face of recent Supreme Court and Ninth Circuit decisions.

Finally, the reasons for this lawsuit are somewhat inexplicable. It is clear that during the period between *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) and *McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), if plaintiffs had brought an action under federal securities laws they would have been entitled to proceed in federal court notwithstanding the arbitration clause. During that period arbitration clauses were held unenforceable as to federal securities claims. *See, e.g., Conover v. Dean Witter Reynolds, Inc.*, 794 F.2d 520 (9th Cir.1986), *vacated*, 482 U.S. 923, 107 S.Ct. 3203, 96 L.Ed.2d 691 (1987), *on remand*, 837 F.2d 867 (9th Cir. 1988) (reconsidered in light of *McMahon*).

This lawsuit, however, was filed after *McMahon*, which clearly enforced an arbitration provision as to Securities Exchange Act claims. Those are the only federal securities claims asserted in this action. Thus, at the time this complaint was filed it was settled law that plaintiffs' federal securities claims were subject to arbitration. Plaintiffs' opposition to the motion was filed on May 3, 1988, yet it fails to take any cognizance of this Circuit's decision in *Cohen v. Wedbush*, 841 F.2d 282 (9th Cir. 1988) handed down two months earlier. As explained above, *Cohen v. Wedbush* totally disposes of many of plaintiffs' arguments. Nor have plaintiffs advanced any legally plausible arguments in support of an exception to the *McMahon* line of cases.

In view of these serious infirmities, plaintiff Harry Gonick and his attorney were instructed to submit declarations regarding Rule 11 compliance. The court has now reviewed those declarations and finds little in them to justify plaintiffs' arguments. Plaintiff Harry Gonick, who is an attorney, and his attorney, Brian McCarthy, now contend they did substantial research and cite cases which they researched and upon which they relied. However, all of plaintiffs' arguments on the arbitration issue are totally devoid of citations to any cases supporting their position. From page 983 to page 987, where plaintiffs discuss the various equitable defenses relieving them of the arbitration provisions—excessive economic power or unconscionability, absence of consideration, fraudulent concealment, affirmative misrepresentations, lack of mutuality, estoppel, some type of equitable favored customer theory and failure to follow security regulations—there is not one case authority cited.

Whatever research plaintiff Harry Gonick and his attorney now claim to have done is not evidenced in the opposition, did not evidence itself in the oral argument and, if anything, is contrary to the position plaintiffs espoused. Accordingly, this court finds the opposition was filed without a reasonable basis in law and contrary to case law. Furthermore, because defendants offered to arbitrate the controversies and avoid bringing the motion, they are entitled to recover the costs and attorneys' fees incurred in having to bring the matter to court and having to defend against a meritless opposition.

## CONCLUSION

Drexel's motion to compel arbitration is granted as to all of plaintiffs' claims. This action is therefore stayed pending the com-

pletion of the arbitration proceedings, in accordance with 9 U.S.C. § 3.

Defendants shall file within fifteen (15) days of this order a declaration setting forth their attorneys' fees and costs in connection with the motion. Plaintiffs shall have fifteen (15) days thereafter to submit a response only as to the reasonableness of the fees and costs.

IT IS SO ORDERED.