[No. S164928. Mar. 18, 2010.]

MARTIN A. STEINER, Plaintiff and Appellant, v.
PAUL THEXTON, as Trustee, etc., Defendant and Respondent;
SIDDIQUI FAMILY PARTNERSHIP, Intervener and Appellant.

COUNSEL

Law Office of Robert Vaughan and Robert Vaughan for Plaintiff and Appellant.

Assembly Member Dave Jones as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Office of Klaus J. Kolb and Klaus J. Kolb for Intervener and Appellant and for Plaintiff and Appellant.

June Babiracki Barlow and Neil Kalin for California Association of Realtors as Amicus Curiae on behalf of Intervener and Appellant and Plaintiff and Appellant.

Law Office of David L. Price and David L. Price for Defendant and Respondent.

OPINION

**MORENO, J.**—Plaintiff Martin A. Steiner, and his partial assignee, intervener Siddiqui Family Partnership (hereafter collectively referred to as plaintiffs), seek specific performance of a sales agreement with defendant property owner Paul Thexton. Based on language granting Steiner "absolute and sole discretion" to terminate the transaction, the Court of Appeal construed the agreement as an option and further concluded the option was revocable because it was unsupported by consideration. The Court of Appeal

also rejected plaintiffs' claim that promissory estoppel required the agreement's enforcement. The court therefore upheld the trial court's refusal to order specific performance of the agreement.

We agree the agreement was an option; however, we conclude sufficient consideration existed to render the option irrevocable. We accordingly reverse the Court of Appeal's judgment and remand the action for further proceedings. In light of our conclusion, we need not reach the promissory estoppel issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Steiner, a real estate developer, was interested in purchasing and developing several residences on a 10-acre portion of Thexton's 12.29-acre parcel of land.[1] County approvals for a parcel split and development permits were required. Thexton had previously rejected an offer from a different party for $750,000 because that party wanted Thexton to obtain the required approval and permits. The written agreement between Steiner and Thexton, prepared by Steiner, provided for Thexton to sell the 10-acre parcel for $500,000 by September 2006 if Steiner decided to purchase the property after pursuing, at his own expense, the county approvals and permits. Paragraph 7 of the "Contingencies" section of the agreement provided Steiner was not obliged to do anything and could cancel the transaction at any time at his "absolute and sole discretion . . . ."[2]

---

[1] The factual and procedural history is largely taken from the Court of Appeal's opinion.

[2] The agreement was titled "REAL ESTATE PURCHASE CONTRACT" and stated in part:

"Martin A. Steiner and/or Assignee, hereinafter called 'Buyer,' offers to pay to FAS Family Trust, Paul Thexton, hereinafter called 'Seller,' the purchase price of Five Hundred Thousand Dollars ($500,000.00) for 10 acres of a 12.29 acre property situated in the County of Sacramento . . . hereinafter called 'Property' . . . .

"TERMS OF SALE:

"1. Upon the Seller's acceptance escrow shall be opened and $1,000 . . . shall be deposited by Buyer, applicable toward purchase price.

"2. During the escrow term, Seller shall allow Buyer an investigation period to determine the financial feasibility of obtaining a parcel split for development of the Property. Buyer shall have no direct financial obligation to Seller during this investigation period as Buyer will be expending sums on various professional services needed to reach the financial feasibility determination. Buyer hereby warranties that all fees shall be paid for said professional services by Buyer and neither the Seller nor the Property will in any way be obligated or indebted for said services. [¶] . . . [¶]

"5. Buyer will pay for the required civil engineering and surveying for the entire parcel map. Any agency requirements of Seller's remaining 2.29 acre parcel will be paid by Seller. Any agency requirements for planning, development or entitlement of the 10 acre parcel will be paid by Buyer. [¶] . . . [¶]

"10. If any condition herein stated has not been eliminated or satisfied within the time limits and pursuant to the provisions herein, or if, prior to close of escrow, Seller is unable or

After Steiner and Thexton signed the agreement on September 4, 2003,[3] Steiner began pursuing the necessary county approvals and, together with his partial assignee Siddiqui, ultimately spent thousands of dollars.[4] In May and August 2004, Thexton cooperated with Steiner's efforts by signing, among other things, an application to the county planning department for a tentative parcel map. In October 2004, however, Thexton asked the title company to cancel escrow and told Steiner he no longer wanted to sell the property.

---

unwilling to remove any exceptions to the title objected to, and Buyer is unwilling to take title subject thereto, then this Contract shall at the end of the applicable time period, become null and void. [¶] . . . [¶]

"17. Buyer hereby agrees to purchase the above described Property for the price upon the terms and conditions herein expressed. . . . [¶] . . . [¶]

"CONTINGENCIES:

"The Buyer shall have from date of acceptance until the closing of escrow to satisfy or waive the items listed herein below:

"1. Seller is aware that Buyer plans to subdivide, apply for planning entitlements and develop 10 acres from the existing parcel and agrees to cooperate, as needed, with Buyer as Buyer attempts to obtain the necessary permits and authorizations from the various local jurisdictions.

"2. Buyer at his sole option and expense will conduct all necessary investigations, engineering, architectural and economic feasibility studies as outlined earlier in this Contract.

"3. Both Buyer and Seller understand that Buyer could have substantial investment during this development period.

"4. Buyer shall hereby indemnify and hold Seller harmless for any acts, errors or omissions of Buyer or Buyer's agents; and Buyer and Buyer's agent hereby agree that, upon the performance of any test, they will leave the Property in the condition it was in prior to those tests.

"5. By acceptance of this offer, the Seller has granted Buyer and/or Buyer's agents, the right to enter upon subject Property for the purpose of conducting said tests and investigations.

"6. Buyer shall indemnify and hold Seller harmless for any costs associated with Buyer's investigations. In the event that this contract is terminated prior to the close of escrow, Buyer shall deliver to Seller the originals or copies of all information, reports, tests, [etc.]

"7. It is the intent of Buyer that the time period from execution of this contract until the closing of escrow is the time that will be needed in order to be successful in developing this project. It is expressly understood that the Buyer may, at its absolute and sole discretion during this period, elect not to continue in this transaction and this purchase contract will become null and void.

"CLOSE OF ESCROW:

"Upon successful completion of subdividing the 10 acres from the existing parcel, Buyer will pay Seller the balance of the purchase price to escrow and close immediately.

"Buyer will move expeditiously with the parcel split. It is anticipated it will take one to three years, due to existing governmental requirements.

"Buyer will give quarterly reports to Seller as to progress of the parcel split.

"If parcel split is not completed by September 1, 2006 this real estate purchase contract will be cancelled."

[3] In January 2004, the parties executed an addendum allowing Steiner to purchase up to 10.17 (instead of 10) acres and eliminating several requirements the original agreement had imposed on Steiner.

[4] Plaintiffs alleged (and the Court of Appeal assumed without deciding) that they had spent $60,000 on efforts to obtain the parcel split.

Steiner nevertheless proceeded with the final hearing of the parcel review committee and apparently obtained approval for a tentative map. Steiner opposed cancelling escrow and filed suit seeking specific performance of the agreement. In his answer, Thexton asserted various defenses, including that the agreement constituted an option unsupported by consideration.[5]

Following a bench trial, the trial court entered judgment in favor of Thexton. It concluded the agreement was unenforceable against Thexton "because it is, in effect, an option that is not supported by any consideration." First, it pointed out that the agreement bound Thexton to sell the property to Steiner for $500,000 for a period of up to three years while Steiner retained " 'absolute and sole discretion' " to cancel the transaction. "The unilateral nature of this agreement," the trial court explained, "is the classic feature of an option."

Second, in concluding, "[b]ased on the evidence and the language of the contract itself, . . . that the option was not supported by consideration," the trial court noted no money was paid to Thexton for his grant of the option to purchase the property, nor did he receive any other benefit or thing of value in exchange for the option.[6] The trial court rejected plaintiffs' claim that the agreement obligated them to expeditiously proceed with the parcel split and that their work and expenses constituted sufficient consideration for the option. The trial court reasoned that the adequacy of consideration is measured as of the time a contract is entered into and pointed out the agreement did not bind plaintiffs to do anything; rather, it gave them the power to terminate the transaction at any time. Finally, the trial court rejected plaintiffs' claim that, in the absence of consideration for the option, their efforts merited applying the doctrine of promissory estoppel. The Court of Appeal affirmed for the reasons given by the trial court and we granted review.

## II. DISCUSSION

We consider whether the agreement was an option and, if so, whether the option was irrevocable because it was supported by sufficient consideration. We conclude, for the following reasons, that the agreement is an irrevocable option.[7]

---

[5] Siddiqui, with leave of court, intervened based on Steiner's partial assignment of his rights.

[6] The agreement required Steiner to pay $1,000 into an escrow account, but the trial court concluded the payment did not constitute consideration.

[7] The interpretation of the agreement is subject to de novo review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865–866 [44 Cal.Rptr. 767, 402 P.2d 839].) We review the trial court's conclusion that no consideration supported the option under the substantial

## A.   *The Sales Agreement Constitutes an Option*

Plaintiffs contend the Court of Appeal erred when it concluded the sales agreement constituted an option. We disagree. We begin by briefly setting forth the established law concerning what constitutes an option.

As this court explained long ago, "When by the terms of an agreement the owner of property binds himself to sell on specified terms, and leaves it discretionary with the other party to the contract whether he will or will not buy, it constitutes simply an optional contract." (*Johnson v. Clark* (1917) 174 Cal. 582, 586 [163 P. 1004].) Thus, an option to purchase property is "a unilateral agreement. The optionor offers to sell the subject property at a specified price or upon specified terms and agrees, in view of the payment received, that he will hold the offer open for the fixed time. Upon the lapse of that time the matter is completely ended and the offer is withdrawn. If the offer be accepted upon the terms and in the time specified, then a bilateral contract arises which may become the subject of a suit to compel specific performance, if performance by either party thereafter be refused." (*Auslen v. Johnson* (1953) 118 Cal.App.2d 319, 321–322 [257 P.2d 664].)

In the present case, although the agreement was titled "REAL ESTATE PURCHASE CONTRACT," the label is not dispositive. Rather, we look through the agreement's form to its substance. (*Mahoney v. San Francisco* (1927) 201 Cal. 248, 258 [257 P. 49].) Viewing the substance, we conclude, as did the trial court, that the agreement between Steiner and Thexton contained "the classic feature[s] of an option." First, the agreement obliged Thexton to hold open an offer to sell the parcel at a fixed price for three years. (See, *ante*, fn. 2 [close of escrow provisions].) Second, Steiner had the power to accept the offer by satisfying or waiving the contingencies and paying the balance of the purchase price; however, because of the escape clause, Steiner was not obligated to do anything. The relevant term provided "It is expressly understood that [Steiner] may, at [his] *absolute and sole discretion* during this period, elect not to continue in this transaction and this purchase contract will become null and void." (*Ibid.*, italics added [contingencies provision 7].)

Moreover, it appears that the term's broad and express language permitted Steiner to terminate the agreement *even if* all contingencies had been satisfied—indeed, Steiner testified at trial that the term gave him the power to terminate the agreement at any time for any reason, including if he had found

---

evidence test. (*Bard v. Kent* (1942) 19 Cal.2d 449, 452 [122 P.2d 8]; see *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

a better deal. For that reason we reject the notion, advanced by Steiner and various amici curiae, that the agreement should instead be construed as a bilateral contract subject to a contingency. It is true, as amicus curiae California Association of Realtors explains, that a common form of real estate contract binds both parties at the outset (rendering the transaction a bilateral contract) while including a contingency, such as a loan or inspection contingency, that allows one or both parties to withdraw should the contingency fail. However, withdrawal from such a contract is permitted *only* if the contingency fails. By contrast, the agreement here placed no such constraint on Steiner. Rather, it limited *Thexton's* ability to withdraw, but explicitly allowed *Steiner* to terminate at any time for any reason.[8] Even had the agreement obligated Steiner, as he contends, to move expeditiously to remove the contingencies, we would nonetheless conclude that the "absolute and sole" right to withdraw he enjoyed means the agreement is an option.

We briefly address a number of plaintiffs' other arguments, finding none persuasive. First, plaintiffs argue that in the event of ambiguity, California law presumes a contract to be bilateral rather than an option. (*Patty v. Berryman* (1949) 95 Cal.App.2d 159 [212 P.2d 937].) But no ambiguity exists here. The agreement plainly gave him "absolute and sole discretion" to cancel the transaction. Second, in contending the agreement did not unilaterally bind Thexton, plaintiffs assert "nothing in the Contract required Thexton to keep his Property off the market for any defined period of time." Not so. The agreement explicitly obligated Thexton to hold open the offer for up to three years.[9]

■ Third, plaintiffs contend the agreement obliged them to act expeditiously. Even if true, it is irrelevant to whether the agreement constituted an option. Steiner's unfettered power to withdraw at any time for any reason overrode any other obligations. Fourth, plaintiffs argue the Court of Appeal should have applied the implied covenant of good faith and fair dealing to narrow the escape clause to give Steiner only a limited power to terminate the agreement. We disagree. While this court has held that all contracts impose a duty of good faith and fair dealing and that the covenant particularly applies when "one party is invested with a discretionary power affecting the rights of another" (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372 [6 Cal.Rptr.2d 467, 826 P.2d 710]), it has also noted the *implied* covenant does not trump an agreement's *express* language (*id.* at p. 374). " 'The general rule [regarding the covenant of good faith] is

---

[8] Thus, bilateral contracts subject to a contingency, which are widely used in real estate transactions, are not affected by our holding.

[9] Indeed, plaintiffs contradict themselves, later arguing "nothing in the Contract suggests that Thexton reserved the right to revoke, withdraw, or terminate his promise to sell the Property to Steiner . . . ."

plainly subject to the exception that the parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing.' " (*Ibid.*) Given the broad and express language of the escape clause, Steiner's power to withdraw was not constrained by the implied covenant of good faith and fair dealing.

In light of the foregoing reasons, we conclude the Court of Appeal correctly construed the so-called "purchase contract" as an option. We next consider whether the option was irrevocable.

### B. *Sufficient Consideration Rendered the Option Irrevocable*

■ "An option is transformed into a contract of purchase and sale when there is an unconditional, unqualified acceptance by the optionee of the offer in harmony with the terms of the option and within the time span of the option contract. [Citation.]" (*Erich v. Granoff* (1980) 109 Cal.App.3d 920, 928 [167 Cal.Rptr. 538].) At the time Thexton terminated the agreement, plaintiffs had not unconditionally accepted the offer within the terms of the option. Plaintiffs had not satisfied or waived all of the contingencies and deposited the balance of the purchase price into the escrow account. Therefore, the option never ripened into a purchase contract. However, even if an option has not yet ripened into a purchase contract, it may nonetheless be irrevocable for the negotiated period of time if sufficient bargained-for consideration is present.

"[A]n option based on consideration contemplates two separate [contracts], i.e., the option contract itself, which for something of value gives to the optionee the irrevocable right to buy under specified terms and conditions, and the mutually enforceable agreement to buy and sell into which the option ripens after it is exercised. Manifestly, then, an irrevocable option based on consideration is a contract . . . ." (*Torlai v. Lee* (1969) 270 Cal.App.2d 854, 858 [76 Cal.Rptr. 239].) Conversely, an option without consideration is not binding on either party until exercised (*id.* at pp. 858–859); until then, the option " 'is simply a continuing offer which may be revoked at any time.' [Citation.]" (*Thomas v. Birch* (1918) 178 Cal. 483, 489 [173 P. 1102].)

■ Civil Code section 1605 defines consideration as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . ." Thus, there are two requirements in order to find consideration. The promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer)

prejudice. We emphasize either alone is sufficient to constitute consideration; "it is not necessary to the existence of a good consideration that a benefit should be conferred upon the promisor. It is enough that a 'prejudice be suffered or agreed to be suffered' by the promisee. [Citation.]" (*Bacon v. Grosse* (1913) 165 Cal. 481, 490–491 [132 P. 1027].)

It is not enough, however, to confer a benefit or suffer prejudice for there to be consideration. As we held in *Bard v. Kent, supra,* 19 Cal.2d at page 452, the second requirement is that the benefit or prejudice " 'must actually be bargained for as the exchange for the promise.' " Put another way, the benefit or prejudice must have induced the promisor's promise. In *Bard*, the property owner indicated she was willing to grant an extension of a lease for four years if the lessee's sublessee undertook $10,000 of improvements to the property. The owner suggested that the lessee have an architect draw sketches to get a cost estimate. The owner then granted an option to extend the lease in return for consideration of $10; however, the $10 was never paid to the owner and she died before the option was exercised. (*Id.* at p. 451.) The lessee nonetheless argued the money he spent for the architect's drawing was sufficient consideration to make the option irrevocable. The trial court disagreed, concluding the owner agreed to be bound in exchange for the unpaid $10, not for the lessee's engaging the architect. (*Id.* at pp. 452–453.) We affirmed, quoting the Restatement of Contracts, section 75: " 'The fact that the promisee relies on the promise to his injury, or the promisor gains some advantage therefrom, does not establish consideration without the element of bargain or agreed exchange.' " (*Bard*, at p. 452.) In sum, in determining here whether sufficient consideration rendered the option to purchase the 10-acre parcel irrevocable, we consider whether Steiner conferred or agreed to confer a benefit, or suffered or agreed to suffer prejudice that was bargained for in exchange for the option.

The lower courts concluded no such consideration supported the option. They reasoned no money was paid for the grant of the option nor did the work performed and expenses incurred by plaintiffs in pursuit of a parcel split benefit Thexton. Citing *O'Connell v. Lampe* (1929) 206 Cal. 282, 285 [274 P. 336], and *Drullinger v. Erskine* (1945) 71 Cal.App.2d 492, 495 [163 P.2d 48], the lower courts explained that the "adequacy of consideration" must be measured at the time an agreement is entered into. The lower courts concluded that, at the time Steiner and Thexton struck their bargain, the promise to seek the parcel split was unenforceable because the escape clause gave plaintiffs the power to terminate the transaction at any time for any reason. Thus, the lower courts held, Steiner's promise was illusory and did not constitute valid consideration. The courts found it immaterial that plaintiffs had begun to perform, because plaintiffs were under no actual obligation to do so. To the contrary, we conclude as a matter of law that

plaintiffs' part performance of the bargained-for promise to seek a parcel split created sufficient consideration to render the option irrevocable.

It is true that Steiner's promise to undertake the burden and expense of seeking a parcel split may have been illusory at the time the agreement was entered into, given the language of the escape clause. However, there can be no dispute that plaintiffs subsequently undertook substantial steps toward obtaining the parcel split and incurred significant expenses doing so.[10] Among other things, plaintiffs paid for the required civil engineering and surveying for the parcel and spent a number of months applying to the county planning department for a tentative parcel map, proceeding with the final hearing of the parcel review committee, and obtaining approval of the tentative map. On this record, the only possible conclusion is that Steiner both conferred a bargained-for benefit on Thexton and suffered bargained-for prejudice unaffected by his power to cancel, making up for the initially illusory nature of his promise.

It is undisputed that a parcel split of the 12.29 acres was necessary for Thexton to be able to sell a portion of his land to anyone while still retaining a two-acre parcel for himself to live on. There is also no dispute that Thexton did not want to have to go through the process of obtaining the parcel split himself. Indeed, he had previously rejected an offer of $750,000 for the 10 acres ($250,000 more than Steiner was to pay for the parcel) because that buyer wanted Thexton to obtain the required approval. It is clear then that a critical part of Thexton's willingness to sell was that Steiner would bear the expense, risk, and burden of seeking the parcel split. Indeed, there is evidence that Thexton told Steiner it was important to him that any interested buyer undertake the process of obtaining the parcel split. Thus, both elements of consideration were present. First, the effort to obtain the parcel split clearly conferred a benefit on Thexton *and* constituted prejudice suffered by plaintiffs.[11] Second, the promise to pursue the split was plainly bargained for and induced Thexton to grant the option. Accordingly, plaintiffs' part performance cured the illusory nature of their promise.[12]

---

[10] Plaintiffs completed 75 to 90 percent of the work needed to obtain the parcel split and county approvals and alleged they collectively spent $60,000 in doing so. We have no occasion to consider whether any act, no matter how small, would be sufficient part performance to make an option irrevocable.

[11] As Steiner's counsel acknowledged at oral argument, the outcome might have been different had plaintiffs' efforts been exclusively in their own interest, such as only securing county approvals to develop the 10-acre parcel.

[12] Although our conclusion is based upon plaintiffs' part performance of the promise to obtain a parcel split, we also note the agreement required Steiner to deposit $1,000 into escrow, which he did. The trial court concluded the payment did not constitute consideration because Steiner would recover the money if he terminated the agreement; thus, the money did not confer a benefit on Thexton. However, even assuming the trial court's interpretation of the

Two cases illustrate the point. In *Burgermeister Brewing Corp. v. Bowman* (1964) 227 Cal.App.2d 274 [38 Cal.Rptr. 597], a brewery entered into an oral contract with a distributor whereby the distributor would sell the brewery's product. (*Id.* at p. 278.) The brewery agreed to give the distributor all the beer the distributor could sell using its best efforts. Nineteen years later, after the distributor had spent significant time and resources selling the beer, the brewery cancelled the agreement. (*Id.* at pp. 278–280.) When sued, the brewery argued the contract was illusory, lacking mutuality: it bound the brewery to provide the beer but did not bind the distributor to use its best efforts. (*Id.* at p. 280.) In ruling for the distributor, the Court of Appeal explained that, even if the distributor had not promised to use its best efforts, its subsequent performance gave the brewery consideration not affected by the distributor's power to cancel and thereby made up for any defects in the original consideration. (*Ibid.*, citing 1A Corbin on Contracts, § 163, p. 76.)

In *Kowal v. Day* (1971) 20 Cal.App.3d 720 [98 Cal.Rptr. 118], the plaintiff entered into an agreement to purchase real property from the defendant. (*Id.* at p. 722.) The escrow instructions required the plaintiff to give the defendant an automobile for the defendant's use and permitted the plaintiff to terminate the sale within 45 days after the close of escrow. The plaintiff subsequently gave the defendant the automobile; however, the defendant ultimately refused to convey the property to the plaintiff. In the resultant action, the trial court ruled in favor of the defendant, because of the plaintiff's unconditional and unilateral right to terminate the transaction. (*Id.* at pp. 722–723.) The Court of Appeal reversed, explaining that although consideration is typically lacking when an exchange of promises does not impose mutual obligations, the plaintiff's part performance in the form of transferring possession of the car created sufficient consideration transforming the agreement's termination clause into an enforceable option, even though the plaintiff was entitled to return of the car upon disaffirmation of the transaction. (*Id.* at pp. 724, 726.)

■ In sum, it is true that, where consideration for an agreement consists of an exchange of promises, that one party's promise is illusory generally means there is no consideration. (*Mattei v. Hopper* (1958) 51 Cal.2d 119, 122 [330 P.2d 625].) "A corollary to that rule exists, however. An agreement that is otherwise illusory may be enforced where the promisor has rendered at least part performance. [Citations.]" (*Money Store Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722, 728–729 [120 Cal.Rptr.2d 58].) Moreover, as this court explained in *Drennan v. Star Paving Co.* (1958)

agreement is accurate, it is not clear its ultimate conclusion is correct. As previously discussed, for consideration to exist it is sufficient that a promisee suffers bargained-for prejudice. By placing the money in escrow, Steiner gave up use of the money for as much as three years. This arguably constituted prejudice to Steiner even if he ultimately got the money back. In light of our conclusion regarding plaintiffs' part performance, we need not resolve the effect of the escrow payment.

51 Cal.2d 409, 414 [333 P.2d 757], when an offer for a unilateral contract is made (as in the case of an option) " 'and *part of the consideration requested in the offer is given or tendered by the offeree in response thereto*, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer . . . .' "[13] (Italics added.) Applied here, plaintiffs' substantial efforts and expenditures to perform the bargained-for promise to seek a parcel split cured the initially illusory nature of the promise and rendered the option irrevocable.

We address two final points. First, as noted above, the lower courts concluded that the adequacy of consideration is to be determined at the time an agreement is entered into. However, the two cases relied upon are inapplicable here. In both cases, the parties had entered into option contracts for the purchase of real property. (*O'Connell v. Lampe, supra*, 206 Cal. at p. 282; *Drullinger v. Erskine, supra*, 71 Cal.App.2d at p. 494.) The parties agreed upon a price for the properties when they entered into the option contracts; however, at the time the buyers exercised their options, the sellers refused to perform, contending the agreed-upon consideration was inadequate due to a subsequent increase in the properties' values. (*O'Connell*, at p. 283; *Drullinger*, at pp. 494–495.) It was in this context that the courts ruled in favor of the buyers, explaining that the *adequacy* of consideration is determined at the time of the agreement. (*O'Connell*, at p. 285; *Drullinger*, at p. 495.) Here, by contrast, we consider not whether the agreed-upon consideration for the purchase was adequate, but whether consideration existed at all to support the option.

Second, we acknowledge that *Prather v. Vasquez* (1958) 162 Cal.App.2d 198 [327 P.2d 963] reached a seemingly different result. The case involved an agreement for the sale of property. The escrow instructions called for the buyer to deposit money and a trust deed. At the buyer's request, the agreement also required he pay all escrow costs in the event he withdrew; he explained he did not wish to buy the land if it could not be subdivided and he wanted to be protected from suit in that event. The buyer then sought to obtain development approval, but the owners cancelled the agreement before the buyer deposited money into escrow. The buyer argued the option was irrevocable because it was supported by valid consideration. (*Id.* at pp. 200, 202, 204.) In rejecting that argument, the Court of Appeal concluded the buyer's effort to seek development approval did not constitute consideration as it was not a bargained-for inducement for the offer of an option; nor did the buyer's obligation to pay costs if he cancelled the agreement provide

---

[13] Thus, we reject the contention made by Thexton's counsel at oral argument that part performance can never constitute consideration for an option. (See also *Kowal v. Day, supra*, 20 Cal.App.3d at p. 726.)

consideration because it did not benefit the seller. (*Id.* at pp. 204–205.) Even if *Prather* was correct, it is factually distinguishable. There can be no dispute that Steiner's promise to seek the parcel split induced Thexton's offer of the option. Moreover, the parcel split itself, unlike the development approval sought in *Prather*, was necessary to Thexton's ability to sell the property because he wanted to retain two acres of the parcel.

In conclusion, we hold plaintiffs' part performance of their bargained-for promise to seek a parcel split cured the initially illusory nature of the promise and thereby constituted sufficient consideration to render the option irrevocable.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed and the case is remanded for further proceedings.[14]

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

---

[14] Thexton raised a number of affirmative defenses in addition to the ones considered here. Among them were that plaintiffs' claims are barred by various equitable doctrines and that their claims are barred by the applicable statute of limitations. On remand, the lower courts can consider whether plaintiffs' claims survive Thexton's other defenses and, if so, what the appropriate remedy might be. Because the remedy of specific performance is equitable in nature (see, e.g., 13 Witkin, Summary of Cal. Law (10th ed. 2005) Equity, § 24, pp. 312–314), the lower courts can consider whether ordering specific performance is warranted or whether other relief might suffice.