Filed 5/15/13  Swendeman v. Parent CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROBERT E. SWENDEMAN, | C066310 |
| Plaintiff and Respondent, | (Super. Ct. No. 34200800021019) |
| v. | |
| DOROTHY O. PARENT, Individually, etc., | |
| Defendant and Appellant. | |

In this action by the seller's broker to recover a commission for the sale of real estate, the seller, Dorothy O. Parent, advanced two theories to avoid payment of the commission.  The trial court rejected the first theory she pursued at trial:  that the land purchase agreement, which included the broker's right to a commission, had expired.  It also rejected the second theory she asserted for the first time in objecting to the statement of decision:  that the land purchase agreement was not a bilateral contract, but an option that expired by its own terms.

The court awarded the broker a 5 percent commission on the sales price set forth in the land purchase agreement, though the sale ultimately was not consummated

1

pursuant to the land purchase agreement but was instead concluded at a higher price according to the terms of a settlement agreement the seller reached with the buyer, Enterprise Rancheria, after the seller repudiated the contract. The seller appeals. We affirm.[1]

## FACTS

The parties cite many more facts than are relevant to the disposition of the limited issue of the broker's right to a commission. The material facts are few.

"It has long been the law of this state that any right to compensation asserted by a real estate broker must be found within the four corners of his employment contract. [Citations.] By the same token, however, '[the] parties to a broker's contract for the sale of real property are at liberty to make the compensation depend upon any lawful conditions they see fit to place therein. [Citations.]' [Citation.] In short it is the *contract* which governs the agent's compensation, and that contract is strictly enforced according to its lawful terms." (*Blank v. Borden* (1974) 11 Cal.3d 963, 969.) We begin, therefore, with the terms of the land purchase agreement, which provides for the broker's commission.

On September 29, 2003, defendant seller sold 63 acres in Butte County to the buyer tribe, Enterprise Rancheria, for a purchase price of $459,197. The land purchase agreement was subject to a number of terms and conditions, including: "Subject to: 1. [United States Department of Housing and Urban Development] Approval, EIR Report, All Gov. Agencies approval of the project, prior to close of escrow. 2. Upon removal of all contingencies, close of escrow will occur within 10 days." The parties stated time was of the essence but expressly provided that "if either party fails to comply with any contingency in this Agreement within the time limit specified, this Agreement

---

[1] The broker's motion to dismiss the appeal as frivolous is denied.

will not terminate until the other party delivers written notice to the defaulting party requiring compliance within 24 hours after receipt of notice. If the party receiving the notice fails to comply within the 24 hours, the non-defaulting party may terminate this Agreement without further notice."

Plaintiff Robert E. Swendeman, doing business as T'N'T Real Estate, is named as the selling broker and represented the buyer. The section of the land purchase agreement describing the terms of his commission provides: "Seller agrees to pay in cash the following real estate commission for services rendered, which commission Seller hereby irrevocably assigns to Broker(s) from escrow: [¶] . . . [¶]

"5% of the accepted price . . . to the selling Broker: T'n'T Real Estate without regard to the agency relationship. Escrow instructions with respect to commissions may not be amended or revoked without the written consent of the Broker(s).

"If Seller receives liquidated or other damages upon default by Buyer, Seller agrees to pay Broker(s) the lesser of the amount provided for above or one half of the damages after deducting any costs of collection including reasonable attorney fees.

"Commission will also be payable upon any default by Seller, or the mutual rescission by Buyer and Seller without the written consent of the Broker(s), which prevents completion of the purchase. This Agreement will not limit the rights of Broker and Seller provided for in any existing listing agreement.

"In any action for commission the prevailing party will be entitled to reasonable attorney fees, whether or not the action is brought to trial or final judgment."

In the addendum to the agreement, the parties set forth additional terms, including: "Close of escrow shall be on or before 12/31/04. If Buyer is not able to close escrow due to delays outside of Buyer[']s control, such as delays with Governmental approvals, Seller shall grant Buyer up to 3-3 month extensions periods at no charge to the Buyer. If escrow does not close at the end of said 3-3 month extension periods (9/30/05), then Seller shall extend escrow for up to 12-1 month extensions periods at a cost of $10,000

3

per month paid thru escrow to Seller prior to any extension period. Said extensions fee shall not be refundable & shall not be applied to purchase price. Escrow to Close on or before 9/30/06."

Buyer did indeed avail itself of the three three-month extensions and nine one-month extensions. Seller, on more than one occasion, attempted to cancel escrow and notified buyer the contract was terminated on its own terms because it had not diligently pursued the required governmental approvals. According to the statement of decision, "With land values increasing, Parent was dissatisfied with the delay and Enterprise Rancheria's apparent inaction." Nevertheless, seller did not give buyer written notice of the failure to comply with any contingency, according to the terms of the land purchase agreement, and requiring compliance within 24 hours. Buyer deposited $10,000 a month into escrow to preserve its right to purchase the property.

In November 2005 seller again instructed the title company to cancel escrow, but the buyer continued to believe it had an enforceable contract and filed a complaint seeking to enforce the agreement. The tribal chair, Glenda Nelson, testified that Enterprise Rancheria needed to close escrow by the end of the federal fiscal year to obtain funding from the United States Department of Housing and Urban Development. Seller and buyer negotiated a settlement to the pending action wherein buyer agreed to pay $1.5 million for the same property.[2] T'N'T played no role in negotiating the second agreement. The revised sale closed on September 15, 2006.

## DISCUSSION

The broker urges us to rely on the simple principle repeated in many cases that a broker earns his commission once he procures a ready, willing, and able purchaser even if

---

[2] Some documents in the record show the sale price as $1.4 million; in others it is given as $1.5 million. We have elected to use the $1.5 million figure as found in the trial court's statement of decision.

4

the sale is never consummated or one of the parties fails to perform. (*Steve Schmidt & Co. v. Berry* (1986) 183 Cal.App.3d 1299 (*Schmidt & Co.*); *Barnes v. Osgood* (1930) 103 Cal.App. 730; *Twogood v. Monnette* (1923) 191 Cal. 103.) If we were to accept his premise, it would not matter if the land purchase agreement was construed as a bilateral contract or an option, and the failure of either or both of the parties to perform pursuant to their initial agreement would be irrelevant because the commission would have been earned as soon as the contract was executed. The problem, however, is that these cases involved a listing agreement in which the brokers' rights to commission were not subject to any conditions. The broker here is relying on the language included in the land purchase agreement and not an independent listing agreement or contract of employment.

"Where the executory contract of sale is conditional, e.g., the obligation of performance is conditioned upon obtaining third party financing, the commission is not earned if the condition is not satisfied." (*R. J. Kuhl Corp. v. Sullivan* (1993) 13 Cal.App.4th 1589, 1600.) The parties are at liberty to condition the payment of a commission on consummation of the sale. (*Id*. at p. 1601.) Here, consummation of the sale was subject to a number of conditions, and unlike the cases the broker cites, it is ambiguous whether his commission was similarly conditioned. We therefore cannot resolve this appeal on the simple notion that he was entitled to his commission once the contract was signed.

The seller argues that the commission was conditioned upon the close of escrow. The trial court found "[t]he provision of the Agreement stating T'N'T's commission was '. . . irrevocably assign[ed] to Broker(s) from escrow' (paragraph 21) is simply the mechanism and timing of payment -- it does not make payment contingent upon closing of escrow under the Agreement." In *Schmidt & Co.*, *supra*, 183 Cal.App.3d 1299, the broker's contract provided, " 'Said commission shall be paid in full at the close of escrow, whether or not said escrow closes within the term of this Agreement.' " (*Id*. at p. 1309.) This language did not set forth a condition of entitlement to a commission, but

5

a limitation on the time of payment. Thus the failure of the escrow to close did not preclude the broker from receiving his commission. (*Id*. at p. 1310; see also *RC Royal Development & Realty Corp. v. Standard Pacific Corp.* (2009) 177 Cal.App.4th 1410, 1421-1422.)

The seller argues that either the contract is an option or it lives on in perpetuity because the notice of termination provision is at odds with the December 31, 2004, expiration language. The seller asserts that if the contract does not expire until one of the parties gives notice of termination, it is still in force today. Her argument is at odds with the contract and the conduct of the parties. The contract gave the buyer the prerogative to extend the contract for three three-month periods and an additional twelve one-month periods, but it expressly provided that escrow was to close on or before September 30, 2006. Moreover, the parties eventually entered into a settlement agreement, thereby voiding the original land purchase agreement.

We need not resolve any other ambiguity because of the unchallenged factual finding that the seller never provided the buyer the requisite notice of default and opportunity to cure before repudiating the agreement. That finding is dispositive. *Torelli v. J. P. Enterprises, Inc.* (1997) 52 Cal.App.4th 1250 provides an apt analogy. In *Torelli*, as here, the broker's right to a commission did not arise from a listing agreement specifically delineating the rights and duties of the parties, but from the real estate contract itself. And in *Torelli*, as here, the sale was not consummated under the real estate contract. The buyer initiated direct negotiations with the seller, the seller agreed to sign a counteroffer after the real estate contract expired, and ultimately the seller refused to pay the broker his commission. The court held, "The law does not allow a broker to be cheated out of his or her commission by the simple artifice of entering into direct negotiations and making substantially the same bargain, albeit without the commission." (*Id*. at p. 1252.)

Similarly, in *Coulter v. Howard* (1927) 203 Cal. 17, the court wrote: "[The seller] having refused on her part to carry out the transaction and having deliberately repudiated the same by making a contract to sell the property to another, there is in reality no equity whatsoever in her position . . . ." (*Id*. at p. 25.) The broker was awarded his commission despite the fact that the seller did not consummate the deal. (*Id*. at p. 26.)

And this leads us to the seller's somewhat belated change of theories. Technically, the issue was raised below in her objection to the statement of decision and it is now the centerpiece of her appeal. She insists that the land purchase agreement was not a bilateral contract but an option, which expired by its own terms at the end of 2004. The court rejected her second-string theory and so do we, albeit after independently reviewing the terms of the contract de novo as we must.

The seller ignores a critical difference between the terms of the land purchase agreement before us and the terms considered by our Supreme Court in *Steiner v. Thexton* (2010) 48 Cal.4th 411 (*Steiner*). In *Steiner*, only the buyer had the " 'absolute and sole discretion' " to terminate the transaction. (*Id*. at p. 414.) The seller was obliged to hold the offer open at a fixed price for three years, but because of the escape clause, the buyer was not obligated to do anything. Indeed, he could terminate the agreement even if all the contingencies were satisfied. The court held that the contract was a unilateral option rather than a bilateral agreement, since only one of the parties was bound to perform. (*Id*. at p. 418.)

We accept the trial court's analysis that *Steiner* does not apply. "The Agreement was not a mere option. Rather, it was a bilateral contract, albeit subject to contingencies. Nothing in the Agreement gave Enterprise Rancheria the absolute and sole discretion to terminate the Agreement, even if the contingencies were not satisfied. [Citation.] [¶] Nor was the projected December 31, 2004, closing date a firm expiration date for Enterprise Rancheria to complete the deal or 'walk away', as would be the case with an option. Instead, it was in the nature of a 'target date' that would be extended

7

automatically if Enterprise Rancheria was not able to close escrow due to delays outside of its control."

The land purchase agreement was a typical real estate contract subject to a variety of contingencies, many of which were outside the parties' control. But both the seller and the buyer were bound by the implied covenant of good faith and fair dealing to remove the contingencies and perform the terms of the contract. The obligations were mutual. There is no support for the seller's last-ditch attempt to escape the consequences of her own repudiation by construing a typical real estate contract as an option.

The seller insists the trial court erred by enforcing the notice of termination provision instead of the "specifically negotiated expiration language." In her view, the notice of termination was boilerplate language in a preprinted form contract drafted by the broker's agent, the buyer, and therefore, pursuant to Civil Code section 1651, should have been disregarded in favor of the date entered by the parties. Her cribbed view of the contract ignores many of its key provisions and is at odds with the purpose and structure of the agreement.

The buyer tribe was dependent on federal financing to complete the transaction and build low-income housing on the land. Aware that satisfaction of many conditions was a prerequisite to obtaining the financing, the parties agreed to a protracted timeline to enable the tribe to satisfy the conditions. Thus, the seller's later focus on one target date, while ignoring the many extensions allowed in the contract and the reality that she had agreed to the conditions, violates the most basic rules of interpreting contracts. She is not at liberty to extract a favorable term and discount the meaning of the provisions disadvantageous to her. The court properly construed the contract, concluding it was a contingent, bilateral contract with a series of target dates and negotiated extensions.

The simple fact is that the seller failed to give the notice she was required to give pursuant to the terms of the agreement. Her failure to do so is fatal to her claim, and her

8

labored attempt to construe the many provisions of the contract is at odds with the plain meaning of the agreement.

But the broker is not satisfied with the amount of the commission set forth in the land purchase agreement. Since that agreement refers to 5 percent of the "accepted price," the broker feels entitled to 5 percent of $1.5 million, or $75,000, rather than 5 percent of the $459,197 price specified in the agreement, or $22,959.85. We disagree.

The broker's right to a commission is pursuant to the terms of the land purchase agreement. The parties agreed to a commission of $22,959.85, and the "accepted price" referred to the price set forth in the land purchase agreement. There is no dispute that the broker did nothing to facilitate the ultimate settlement. To the contrary, when asked he refused. The trial court summed up the argument and the disposition nicely: "T'N'T argues it was not required to do anything to obtain the final agreement: having brought the buyer and seller together on the initial contract, T'N'T had done all it needed to earn a commission on the ultimate purchase. The court is not persuaded. T'N'T's commission should be calculated on the basis of the Agreement under which it is suing, not on the $1.5million final sale price it did nothing to facilitate."

## DISPOSITION

The judgment is affirmed.


                                                  _____RAYE_____, P. J.

We concur:



_____HULL_____, J.



_____MURRAY_____, J.