Filed 9/25/23  Singer v. Bluh CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RUSSELL SINGER,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>CORIE BETH BLUH et al.,<br><br>    Defendants and Respondents. | G061324, G061326<br><br>(Super. Ct. No. 30-2020-01140136)<br><br>O P I N I O N |

Appeals from a judgment and a postjudgment order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Reversed and remanded with directions.

Prenovost, Normandin, Dawe & Rocha, Michael G. Dawe and Brian D. Cronin for Plaintiff and Appellant.

Law Office of Desiree Causey and Desiree V. Causey for Defendants and Respondents.

These consolidated appeals challenge a trial court's judgment in favor of defendants and a denial of a motion for new trial. We conclude the judgment rests on legal errors we cannot conclude were harmless. We reverse and remand with directions.

FACTS

I. *A Promissory Note, Related Parties, and Stock Purchase Agreement*

Three factual points were stipulated to at the bench trial underlying this matter. First, "Robert Blu[]h and [defendant] Buff Weaver[, who we introduce below,] executed a promissory note . . . to Island Restaurant Ventures, Inc.[,] on October 9, 2015." The promissory note (the note) contained the following single-sentence paragraph on choice of law and forum selection: "This [n]ote shall be construed in accordance with the laws of the State of California and the venue will be the State of California." The note set forth that a principal amount of $213,000 and interest would be paid by April 1, 2018, to Island Restaurant Ventures, Inc. (IRV) "and or it's [*sic*] assignee."

As to the above-noted individuals who promised the payment, according to the trial evidence, Robert Bluh was a restaurateur who died four years after signing the note and was at all times relevant to this appeal married to defendant Corie Beth Bluh.[1] The second promisor, Buff Weaver,[2] was a manager at one of Robert's restaurants.

A majority share of IRV (the named payee of the note) was owned by an individual named Guy Edwards. He testified at trial that the note financed Robert's purchase of IRV's minority ownership interest in a "pizza restaurant" in Maui.

On the same day the note was signed, IRV and a limited liability company not material here entered into a "[s]tock [p]urchase [a]greement" (the stock agreement) with buyer Pi Italian Grille, LLC (the Grille), an entity that Robert owned. According to

---

[1] Because they share a surname, we will refer to Robert and Corie using their first names; no disrespect is intended.

[2] Weaver's first name is immaterial to this appeal.

the stock agreement, the Grille acquired a 90 percent ownership interest in a Hawaiian corporation, "Pi Lahaina, LLC," for a purchase price of $213,000. In a subsection titled "[c]onsideration," the stock agreement stated in relevant part: "Robert Bluh, Buff Weaver and agree [*sic*] to sign a note that they will personal [*sic*] guarantee for $213,000[] to [IRV] and or it's [*sic*] as[s]ignee."

II. *Assignment of the Note and Its Context*

The second stipulated fact for trial was that, three years later, on December 21, 2018, "Edwards, on behalf of [IRV], executed an assignment of the [n]ote to . . . Singer." Singer testified he had been a longtime acquaintance of Edwards, that the two had shared the same office building for decades and engaged in different business transactions, and at the time of the assignment, Edwards owed Singer a little over $3 million from separate dealings. The assignment specified the debt balance and provided that "[a]ny funds received from collecting on the [n]ote [would] be credited."

Singer acknowledged no consideration was exchanged for the assignment, confirmed he paid nothing for it, and recounted he did not conduct any due diligence about Robert before accepting the assignment. Singer testified he had physically possessed the note since the assignment date in December 2018 and that Edwards wrote a formal endorsement of the note to Singer on the first day of trial (in January 2022). Singer also acknowledged he received the assignment knowing the note was past its stated due date of April 1, 2018.

III. *Nonpayment of the Note, Robert's Death, and Underlying Pleadings*

The third and final stipulated fact for trial was that "[n]o part of the [n]ote ha[d] been paid." According to its terms, interest had accrued at 4 percent "per annum" until the note's due date, and thereafter accrued annual interest at 10 percent.

Robert died in September 2019, nine months after the note was assigned to Singer. Eight months after the death, Singer filed his lawsuit underlying this matter, alleging a single cause of action for breach of contract based on the note.

Singer added seven defendants to his lawsuit over the following year, but by the time of trial, he proceeded only against Weaver (i.e., Robert's co-signatory on the note) and Corie (Robert's widow) as an individual and "as Trustee of the Robert Alan Bluh Revocable Trust dated April 20, 2005 and any amendments thereto." We will sometimes collectively refer to Corie and Weaver as the defendants.

Before trial, the defendants filed a joint answer to Singer's complaint, asserting 33 affirmative defenses, including a contention that Singer's cause of action was "barred by reason of the failure o[f] consideration in the formation and performance of the alleged contracts."

IV. *The Bench Trial Ruling*

The parties' allegations were tried during a two-day bench trial. In addition to the stipulated facts discussed above, the trial court received as evidence documents including the note, the assignment, and the stock agreement. The court also received testimony from Edwards, Singer, Corie, and Weaver.

After closing statements, the trial court took the matter under submission and the following day issued its ruling for defendants in a minute order. Relevant to this appeal, the order recounted: "The court ruled that it would treat the action as one for failure to pay on a negotiable instrument, as opposed to a contract action requiring consideration, etc." Finding for defendants, the trial judge stated: "The court finds that the instrument is ambiguous and does not carry sufficient badges of negotiability. [(]Comm[.] C[ode,] §§ 1201[, subd.(b)](8), 3104[, subd.](d), 3805[)]"[3] (all further undesignated statutory references are to the Commercial Code).

---

[3] Immaterial to our disposition of this appeal, Commercial Code former section 3805 was repealed many years before this matter arose. (Stats. 1992, ch. 914, § 5.)

4

V. *The Motion for New Trial Ruling*

Singer subsequently filed a motion for a new trial that was denied after oral arguments and supplemental briefing. The trial court's ruling again recounted its overview of the litigation: "This was an action on the enforceability of a $213[,000] promissory note dated October 9, 2015. The note was assigned to [Singer,] (but not endorsed) on December 21, 2018. . . . At trial no one challenged either the genuineness of the 2015 note, the 2018 assignment document, or the 2022 endorsement."

The trial court also expounded on its bench trial ruling in favor of defendants, as follows: "[T]he burden of the case was for [Singer] to prove that the note was enforceable, he had failed to show that he was a holder in due course, which is traditionally the status that a plaintiff in a note enforcement case must show. [Singer] did not even invoke that protection.

"[Singer's other argument for a new trial rests on] two prongs: (i) a challenge to the court's conclusion[, i.e., in its minute order ruling after trial,] that the plaintiff's case suffered from inconsistencies and ambiguity and (ii) the court's statement at one time that the non-negotiability of a note precludes a plaintiff from becoming a holder in due course."

The trial court explained its view that division 3 of the Commercial Code (§§ 3101 - 3605 [negotiable instruments]) applied to the note and then analyzed a specific aspect of the division as follows: "A plaintiff suing on a promissory note will traditionally invoke and benefit from the doctrine of 'holder in due course,' which is routinely defined as a party who acquires a negotiable instrument in good faith, in a value-for-value transaction, and without notice of certain facts that would detract from his good faith. . . . [¶] In this respect the court continues to believe that the evidence was not preponderant that either the assignment or the later endorsement were value-for-value exchanges. Indeed, there was persuasive evidence from both . . . Singer and his initial witness . . . Edwards that . . . Singer was fully aware that by taking the note from

5

Edwards he was taking a virtually valueless instrument since Edwards — his close friend and business colleague from an era even before the date of the original note — was and had been substantially insolvent for years. The apparent fact that the transaction between them was done in the way of a friendship is insufficient to make it one of genuine value."

The trial court concluded: "Plaintiff thus lacking the protection of the holder in due course doctrine and having advanced no authority for supervening it, the court found for defendant [at the bench trial]. [¶] Motion for new trial denied." Singer appealed.

DISCUSSION

Based on the above, we read the record as showing the trial court entered its judgment for defendants based on three legal conclusions: (1) the note was fatally ambiguous; (2) because the assignment of the note from Edwards to Singer lacked "genuine value," Singer was not a holder in due course of the note and therefore could not enforce it; and (3) consideration was not a necessary element of Singer's cause of action because it rested on a negotiable instrument.

On appeal, Singer argues that neither of the first two conclusions justifies the trial court's judgment and that no other ground shown by the record separately justifies an affirmance. We agree and additionally conclude, based on the court's erroneous premise that the element of consideration was not required to support the note, a remand for further proceedings is the appropriate disposition for this appeal.

I. *Standard of Review*

Singer does not challenge the sufficiency of evidence supporting the trial court's factual findings. He instead argues any findings the court made, explicitly or implicitly, are legally insufficient as a matter of law to justify the court's ultimate

6

conclusion that Singer was not entitled to a judgment in his favor.[4]  Given the lack of dispute on the material facts, our review is de novo.  (See *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 ["when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract"].)

## II.  *Applicable Legal Principles*

The essential elements of a breach of contract action are:  (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff.  (*Richman v. Hartley* (2014) 224 Cal.App.4th 1182, 1186.)  Relevant to the trial court's rulings in this case, "'"[w]here a contract is *so* uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.'"  [Citation.]" (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 777 (*Moncada*), italics added; see *ibid*. [the "'"law leans against the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained"'"].)  "Whether a contract is certain

---

[4]  The parties dispute whether the doctrine of implied findings should be applied on appeal because, when the matter was submitted after closing statements, the trial judge indicated:  "[Y]ou're not getting a statement of decision unless I file one." (See Code of Civ. Proc., § 632 [relevant here, "the request must be made prior to the submission of the matter for decision"].)  Typically, a "'failure to request a statement of decision when one is available has two consequences.  First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision.  Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence.  [Citations.]' [Citation.]" (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 237.)  Based on the particular circumstances here, we conclude the doctrine is immaterial for our review because the appellate record adequately shows what the judge found.  (See *Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1477 ["'"When the record clearly demonstrates what the trial court did, we will not presume it did something different"'"].)

enough to be enforced is a question of law for the court. [Citation.]" (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 348, fn. 1.)

Next, "[a]n assignment requires very little by way of formalities and is essentially free from substantive restrictions. '[I]n the absence of [a] statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective assignment. It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee.' [Citations.] Generally, interests may be assigned orally [citations], and assignments need not be supported by any consideration [citations]." (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1002 (*Amalgamated Transit Union*); see *Brown v. Patella* (1938) 24 Cal.App.2d 362, 364 ["An oral assignment of a promissory note is valid"].) "An assignee ""'stands in the shoes'"" of the assignor, taking his or her rights and remedies subject to any defenses the obligor has against the assignor prior to notice of the assignment. [Citations.]" (*Creative Ventures, LLC v. Jim Ward & Associates* (2011) 195 Cal.App.4th 1430, 1447 (*Creative Ventures, LLC*).)

Finally, the parties do not dispute the Commercial Code applies to the note at issue here. We agree with the trial court the note qualifies as a negotiable instrument as defined by division 3 of the Commercial Code (§§ 3104, subd. (a), 3109, subd. (b), 3110, subd. (d)),[5] which does not displace general contract principles but provides specific rules for covered aspects of dispute resolution. (§ 1103, subd. (b) ["Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and

---

[5] As the trial court correctly noted in its new trial motion ruling, although the title of the note contains the word "secured," it is not actually secured by collateral covered by division 9 of the Commercial Code. (See *Steiner v. Thexton* (2010) 48 Cal.4th 411, 418 (*Steiner*) ["we look through the agreement's form to its substance"]; see *In re Ehrle* (Bankr. 9th Cir. 1995) 189 B.R. 771, 775 [personal guaranty merely reiterated promissory note obligation and did not create security interest].)

agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions"].)

III. *Analysis*

As discussed, it was stipulated at trial that Robert and Weaver signed the note promising payment to IRV, that IRV assigned the note to Singer, and that no payment was made. The essential terms of the note are reasonably certain that Robert and Weaver had to pay $213,000, plus interest, by the note's due date in April 2018. Based on these facts, except on the factual issue of contract consideration which we do not determine (for the reasons discussed further below), Singer had a valid breach of contract cause of action based on the note, absent some overriding issue.

No such issue is identified in the trial court's rulings. Putting consideration aside for the moment, we noted the court concluded the note was fatally ambiguous and because the assignment of the note from Edwards to Singer lacked "genuine value," Singer was not a holder in due course and therefore could not enforce the note.

Neither conclusion justifies the judgment. First, based on the essential terms described above, we disagree with the trial court as a matter of law that the note's written terms were so uncertain and indefinite the signing parties' intentions cannot be ascertained. (*Moncada, supra*, 221 Cal.App.4th at p. 777.) Next, although Singer could not qualify as a holder in due course,[6] the lack of that status did not negate his standing as an assignee who could demand payment of the note, subject to defenses raised by the defendants. (*Creative Ventures, LLC, supra*, 195 Cal.App.4th at p. 1447.) Because the *assignment* did not require consideration (*Amalgamated Transit Union, supra*, 46 Cal.4th

---

[6] As Singer correctly conceded from the outset of the trial, he took possession of the note after its due date had passed. (§ 3302, subd. (a)(2) ["'holder in due course'" status requires holder to have taken instrument "without notice that the instrument [was] overdue or ha[d] been dishonored," among other conditions].)

9

at p. 1002), the trial court's finding there was no "genuine value" supporting the assignment is of no moment to this appeal.

IV. *Defendants' Appellate Contentions*

Defendants unpersuasively assert the record supports an affirmance. Apart from the flawed holder-in-due-course reasoning discussed above, they baldly assert Singer's "claims were subject to numerous defenses," but identify none that demonstrate the trial court's judgment reached the correct result. For example, although defendants validly note the transactions surrounding the note and assignment were "confusing," they do not connect that general point to any specific affirmative defense they raised through their filed answer. (See *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 807 [objections, including affirmative defenses, "are ordinarily deemed 'waived' if the defendant does not raise them in its demurrer or answer to the complaint"]; see also *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 401-403 [analyzing whether pleadings in answer to asserted promissory note liability raised "sham transaction" affirmative defense].)

Corie asserts one appellate argument separate from Weaver. She challenges the enforcement of California law against her and cites to out-of-state case law, including Hawaiian appellate court opinions. She argues that because she was not a signatory on the note containing the California choice-of-law and forum selection provision, we must apply Hawaiian law to resolve this appeal in her favor.

At the beginning of trial, Singer filed a supplemental trial brief addressing Corie's choice-of-law position. Singer asserted (among other things) that Corie should have raised the issue as an affirmative defense. We do not decide whether the issue had to have been raised as an affirmative defense but, given the record and Corie's lack of discussion on choice-of-law jurisprudence in her trial briefing (see *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465 [reaffirming Restatement Second of Conflict of Laws approach to choice of law analysis]), we conclude Corie did not

10

preserve the issue for our appellate review (see *People v. Partida* (2005) 37 Cal.4th 428, 435 ["A party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct"]; see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 ["'[w]e are not bound to develop appellants' arguments for them'"].) We express no view on the issue for remand.

V. *Remand*

On our remand directions to the trial court, Singer does not request us to direct a judgment to be entered in his favor and does not dispute defendants' argument that, if there was reversible error, the result of this appeal should be a retrial. We agree allowing further proceedings is the appropriate disposition because the record shows the trial judge foreclosed defendants from exploring factual topics potentially relevant to their affirmative defense asserting a lack of consideration for the note. (See U. Com. Code com., par. 1, reprinted at 23A, pt. 2 West's Ann. Cal. U. Com. Code (2002 ed.), foll. § 3303, p. 302 ["If an instrument is not issued for consideration the issuer has a defense to the obligation to pay the instrument"].)

Defendants' trial brief challenged whether adequate consideration supported the note. At trial, in addition to the stock agreement signed the same day as the note, defendants presented an August 2015 "business purchase agreement" that listed Robert as the buyer and, as the seller, the same "Pi Lahaina, LLC" (the LLC) that was the subject of the stock agreement entered the same day the note was signed.

Read literally, the purchase agreement shows the entirety of the LLC was sold to Robert in August 2015 for at least $370,000, two months before the stock

11

agreement and note for $213,000.[7]  It was also undisputed at trial that Weaver (Robert's co-signatory on the note) at no point possessed any ownership interest in any restaurant. (See *Steiner, supra*, 48 Cal.4th at pp. 420-421 [two requirements of consideration under Civ. Code, § 1605 are "[t]he promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer) prejudice" and "the benefit or prejudice '"must actually be bargained for as the exchange for the promise"'"].)

The presentation of the note to the trial court created a presumption of consideration (Civ. Code, § 1614) and it was defendants' burden to demonstrate a lack of it (Civ. Code, § 1615).  Because of the trial judge's mistaken view on consideration — i.e., "that it would treat the action as one for failure to pay on a negotiable instrument, as opposed to a contract action requiring consideration" — we do not conclude the foreclosure of the factual topic at trial (see *Henderson v. Fisher* (1965) 236 Cal.App.2d 468, 475 ["the question of adequacy of consideration is generally considered as a question of fact"]) was immaterial to the result of this case.  Also because of the explicitly mistaken view, we do not presume the court made an implied finding that defendants failed to satisfy their trial burden on the affirmative defense.

In sum, we conclude the trial court's judgment must be reversed and a direction to retry the matter (if Singer so chooses) is the appropriate disposition for this appeal.  (Code Civ. Proc., § 43; see *People v. Barragan* (2004) 32 Cal.4th 236, 248 [discussing effect of law of the case doctrine on new proceeding after remand]; see also *Hall v. Superior Court* (1955) 45 Cal.2d 377, 381 ["'(A)n unqualified reversal remands

---

[7]     We note the stock agreement contains a provision that acknowledges the purchase agreement, stating:  "Bluh also agrees to adhere to the business purchase agreement between him and [the LLC] dated and executed August 14, 2015, see [e]xhibit A, attached within."  But given defendants' trial brief assertions of further material context and the trial judge's evidentiary rulings at trial, we conclude defendants' exploration of the consideration issue was limited by the judge.  We of course express no opinion on the ultimate admissibility of evidence to be proffered in further proceedings.

the cause for a new trial [citation] and places the parties in the trial court in the same position as if the cause had never been tried, with the exception that the opinion of the court on appeal must be followed so far as applicable'"].)

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings consistent with this opinion.  Singer is awarded his costs on appeal.


O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

13